(Goldfarb T.T., 1/15/03, at 260–266; R.R. at 312–317).

Nancy KANTER, Esquire, Appellee

v.

Alan B. EPSTEIN, Esquire, and Spector Gadon & Rosen, Appellants.

Appeal of: Spector, Gadon & Rosen

Appeal of: Alan B. Epstein, Esquire

Nancy Kanter, Esquire, Appellee

v.

Alan B. Epstein, Esquire, and Spector Gadon & Rosen, P.C., Appellants

Appeal of: Spector, Gadon & Rosen and Alan B. Epstein, Esquire

Nancy Kanter, Esquire, Appellant

v.

Alan B. Epstein, Esquire, and Spector Gadon & Rosen, Appellees

Appeal of: Nancy Kanter, Esquire

Superior Court of Pennsylvania.

Argued Aug. 31, 2004.

Filed Dec. 10, 2004.

Reargument Denied Feb. 11, 2005.

Richard A. Sprague, Philadelphia, for Spector Gadon & Rosen.

G. Alexander Bochetto, Philadelphia, for Kanter.

Gabriel L. Bevilacqua, Philadelphia, for Epstein.

Before: MUSMANNO, OLSZEWSKI and POPOVICH, JJ.

OPINION BY MUSMANNO, J.:

¶ 1 These consolidated appeals arise out of a dispute over a fee agreement. Nancy Kanter, Esquire ("Kanter") referred a case to Alan B. Epstein, Esquire ("Epstein"). The case involved a claim by a child in the foster system who was abused by her pro-

spective adoptive foster parents (the "Tara M. case"). Kanter had served as a guardian *ad litem* for the child. When Kanter referred the case to Epstein, he agreed to pay her a referral fee. However, this agreement was not reduced to writing. Subsequently, Epstein joined the firm of Spector Gadon and Rosen, P.C. ("SGR") while he was handling the Tara M. case. Eventually, the Tara M. case was settled for $4,310,000. From that amount, Epstein realized attorney's fees of $1,293,000. Kanter claimed that she was entitled to a referral fee of $431,000. However, Epstein and SGR refused to pay Kanter a referral fee.

¶ 2 Kanter filed suit to recover the unpaid referral fee, as well as punitive damages, based upon her allegation that Epstein and SGR (collectively, "the Defendants") engaged in outrageous, malicious, wanton, reckless, willful, or oppressive behavior. The suit that followed was very contentious. On May 9, 2002, the jury rendered a verdict in favor of Kanter, but awarded her only $215,500. The punitive damages aspect of the case was tried on May 9, 2002. After several days of deliberation, the jury returned a verdict of no liability on the basis of the punitive damages claim.

¶ 3 Kanter filed a Motion for sanctions on May 14, 2002, and a post-trial Motion on May 17, 2002. The Defendants filed respective post-trial Motions on May 23, 2002. On August 16, 2002, counsel for SGR informed the court that she would be taking a pre-paid vacation and requested that the briefing schedule be adjusted to accommodate her vacation. As a result, counsel for the parties executed a written agreement to extend the Rule 227.4 deadline.[1] Arguments for the post-trial Motions and Motion for sanctions were held on November 25, 2002. At that time, the trial judge initiated a discussion concerning the Rule 227.4 deadline. Following on-the-record discussions, the trial court summarized the agreement of all parties that the Rule 227.4 deadline would be extended until March 14, 2003. Counsel for the Defendants explicitly agreed on the record to this extension. Thereafter, the contentious nature of this lawsuit intensified. The trial judge issued various case management and discovery Orders, as well as a sanctions Order against the Defendants.

¶ 4 Despite the fact that they had executed a written agreement and had agreed on the record to extend the Rule 227.4 deadline until March 14, 2003, the Defendants filed a praecipe to enter judgment on January 8, 2003, and judgment was entered that same day. The Defendants filed Notices of appeal on January 9, 2003, at 186 EDA 2003 and 187 EDA 2003. Thereafter, Kanter filed a Motion to Quash, as well as her own Notice of appeal at 1161 EDA 2003, which she notes will be withdrawn if her Motion to quash is granted.

---

1. Rule 227.4 provides in pertinent part:
   In addition to the provisions of any Rule of Civil Procedure or Act of Assembly authorizing the prothonotary to enter judgment upon praecipe of a party, the prothonotary shall, upon praecipe of a party:
   (1) enter judgment upon the verdict of a jury or the decision of a judge following a trial without jury, if

   \*      \*      \*      \*      \*      \*

   (b) one or more timely post-trial motions are filed and the court does not enter an order disposing of all motions within one hundred twenty days after the filing of the first motion. A judgment entered pursuant to this subparagraph shall be final as to all parties and all issues and shall not be subject to reconsideration....
   Pa.R.C.P. 227.4.

¶ 5 After the Defendants filed their Notices of appeal, the trial court continued to address the pending post-trial, discovery, and sanctions motions. The trial court then imposed sanctions upon both Defendants for their failure to comply with the various court Orders. The trial court ultimately issued an Order dated March 10, 2003, in which the trial court denied the Defendants' post-trial Motions and granted Kanter's post-trial Motion, in part. Essentially, the trial court granted: (1) Kanter's request for *additur*, increasing the award to $431,000; (2) pre-and post-judgment interest; (3) Kanter's request for punitive damages; and (4) Kanter's Motion for sanctions. The Defendants filed a joint Notice of appeal from this Order at 924 EDA 2003.

▮ ¶ 6 Before reaching the merits of these consolidated appeals, we must first consider the Motion to quash filed by Kanter. Kanter argues that the Defendants' appeals at 186 and 187 EDA 2003 should be quashed as the parties had agreed to extend the Rule 227.4 deadline. In opposition to Kanter's Motion to Quash, the Defendants assert that there was no agreement to extend the Rule 227.4 deadline until March 14, 2003. The Defendants base their position on Philadelphia Local Rule 227, which requires that any agreement to waive or extend the Rule 227.4 deadline be in writing. The Defendants contend that no valid extension until March 14, 2003 existed, as the agreement was not in writing as required by local Rule 227. They further contend that the on-the-record discussion does not evidence their intentions to extend the deadline. We disagree.

¶ 7 Upon our review of the November 25, 2002 transcript, it is clear that the Defendants agreed to extend the Rule 227.4 deadline until March 14, 2003. While Rule 227.4 enables the parties to enter judgment where the trial court has not ruled upon post-trial motions within 120 days of the filing of the motions, Rule 227.4 is optional. *Pentarek v. Christy*, 854 A.2d 970, 973 (Pa.Super.2004) (recognizing that the Rule 227.4 deadline is optional and that the parties may elect to wait for the trial court's ruling).

¶ 8 In this case, the record reveals that the parties explicitly agreed to extend the 120 day deadline until March 14, 2003, and to await the trial court's ruling on the post-trial Motions. Upon the initial request of SGR, the parties signed a written agreement wherein all parties agreed to extend the Rule 227.4 deadline.[2] The agreement did not provide for a new Rule 227.4 deadline, nor did it specify the length of time of the extension.

¶ 9 On November 25, 2002, the parties appeared before the trial court. Attorneys Daniel J. Dugan and Jennifer Meyers appeared for both of the Defendants. Epstein was also present in the courtroom. During the hearing, the trial court specifically noted that because it appeared that additional briefing and discovery were necessary, an extension of the Rule 227.4 deadline would be necessary. N.T., 11/25/02, at 52.[3] During the on-the-record discussion, the following colloquy took place:

> THE COURT: There is an agreement to further extend Rule 227.4, Rule of Civil Procedure Deadline to the date of March 14th, 2003.

---

**2.** The agreement was signed by all parties between June 19–24, 2002.

**3.** Although no such limitation was contained in the written agreement, the trial court believed that the Rule 227.4 extension expired on November 25, 2002.

During that period of time, there's some deadlines within deadlines, and this is what it is. [Thereafter the trial court outlined certain discovery and briefing deadlines.]

\* \* \* \* \* \*·.

And [the] hearing will be on or before March the 14th. And we, of course, won't know what that will be until we get a bit closer. So we'll know what that date is. And we will contact each of you to find out what is convenient for you.

And so March 14th ought to be the deadline for all of these.

Do you have any problems with these dates?

MR. DUGAN: *I don't have a problem with the date.*

*Id.* at 54–56 (emphasis added). Given the clear transcript of the proceedings, we conclude that it is disingenuous of the Defendants to now argue that they did not agree to extend the Rule 227.4 deadline to March 14, 2003.

¶ 10 Having concluded that the Defendants explicitly agreed on the record to extend the Rule 227.4 deadline until March 14, 2003, we must now determine whether that agreement violated Philadelphia Local Rule 227. Philadelphia Local Rule 227(e)(3) provides that "[t]he court shall dispose of the post-trial motions within 120 days of the filing of the first motion unless the parties agree in writing to waive the application of Pa.R.C.P. 227.4(1)(b)." In this case, the parties agreed in writing to extend the Rule 227.4 deadline. There-

fore, the written agreement indefinitely extended the Rule 227.4 deadline. The Defendants' contention that the Rule 227.4 deadline would expire 120 days from the date of agreement is simply a bald assertion that is in no way supported by the agreement or Philadelphia Local Rule 227.[4] The agreement signed by all parties did not contain a specific date upon which the extension would expire.

¶ 11 Having concluded that the parties' written agreement to extend the Rule 227.4 deadline did not expire prior to the filing of the Praecipe to enter judgment, we conclude that the Defendants' actions in filing the praecipe violated their explicit agreement to extend the Rule 227.4 deadline. Accordingly, the judgment entered on January 9, 2003 was improvidently entered as a result of the Defendants' breach of their agreement to extend the Rule 227.4 deadline. As a result, Defendants' appeal of the trial court's December 30, 2002 contempt Order was interlocutory and not appealable at the time that the Defendants filed their appeals at 186 and 187 EDA 2003. Accordingly, the appeals filed at Nos. 186 and 187 EDA 2003 are quashed.[5]

¶ 12 In their joint appeal at 924 EDA 2003, the Defendants each raise numerous issues. SGR raises the following seven issues:

1. Whether the trial court erred in not holding and/or failing to instruct the jury that [Kanter] is legally barred from retaining the benefit of any referral fee inasmuch as the negotiation and/or re-

---

4. According to the Defendants' position, the extension of the Rule 227.4 deadline would have expired prior to the November 25, 2002 hearing. However, we note that the Defendants did not voice their position that the *written agreement had expired during discussion* concerning the Rule 227.4 deadline at that hearing.

5. We note that Kanter has expressly stated that her appeal at 1161 EDA 2003 would be withdrawn in the event that we granted her Motion to quash. Consequently, we will not address the issues raised by Kanter in her appeal.

ceipt of such a fee would be an impermissible conflict of interest in light of [Kanter's] position as guardian of the minor child, as a result of having contributed to the settlement, and otherwise improper because it was not disclosed to the client or set forth in the retainer agreement.

2. [W]hether the trial court erred in awarding an *additur* inasmuch as there existed an evidentiary basis for the jury's calculation of compensatory damages.

3. Whether the trial court erred, and deprived Defendants of their constitutional rights, in granting [Kanter's] Motion for a new trial on the claim for punitive damages, notwithstanding a jury verdict in favor of SGR and against Kanter on the claim for punitive damages, and in giving Kanter the option of a new trial, or an award of $645,000 in punitive damages without the necessity of a new jury trial on punitive damages.

4. Whether the trial court erred in ordering post-verdict asset discovery of Defendants where the jury found Defendants were not liable for punitive damages, no viable issue for a new trial on punitive damages was raised and no new trial as to punitive damages had been ordered.

5. Whether the trial court erred, and violated Defendants' constitutional rights, in holding SGR in contempt of court and imposing fines, without a hearing where (1) the order allegedly violated was not clear, definite and specific and/or (2) there was an absence of any evidence that Defendants violated the order, and/or (3) assuming *arguendo* a violation of an order of court, there was an absence of any evidence of a willful violation.

6. Whether the trial court erred, and violated Defendants' constitutional

rights, in imposing attorney's fees as a sanction against SGR without a hearing and without any evidence presented as to entitlement of attorney's fees, the reasonableness of such fees or whether such fees were the result of conduct by SGR.

7. The Orders of January 10 and 15[,] 2003, and March 10, 2003, are void inasmuch as they were entered after the Court had been deprived of jurisdiction by reason of the appeals taken by Epstein and SGR on January 9, 2003.

Brief of SGR at 6. Epstein also raises the following issues:

1. Is a court-appointed Guardian for a seriously injured child, who (1) hires a lawyer and institutes a civil action in her capacity as Guardian on the child's behalf, (2) is subsequently joined as a defendant in that action based on her negligent care of the child as the child's court-appointed Child Advocate, and (3) contributes to the monetary settlement of the child's case, precluded as a matter of law from requesting and receiving a percentage-based referral fee (that was oral, not confirmed in any writing and completely undisclosed to the minor or her newly appointed adoptive mother) because such an arrangement would constitute a clear conflict of interest between the Guardian's self-interest and that of her ward?

2. Is the judgment entered on the trial court's Order of March 10, 2003 improper, unconstitutional and unenforceable since: (a) the Order was entered two months after an appeal was taken with adequate security posted; (b) the trial court improperly awarded a substantial additur ($215,500) to the jury's assessment of compensatory damages, an assessment that was well supported by the record evidence; (c) the trial court ordered an improper, and unconstitutional

award of punitive damages in the amount of $645,000 in favor of Kanter without a retrial on that issue notwithstanding the jury's proper rejection of Kanter's claim for punitive damages and the fact that the issue of punitive damages was improperly submitted to the jury in the first place; (d) the trial court improperly and unconstitutionally imposed fines for an alleged contempt of orders of the court for discovery and production of income-based documents of Epstein and his wife related to the issue of punitive [damages] during and after trial without legal or factual basis therefore and without providing the opportunity for Epstein to be heard; and (e) the trial court improperly and unconstitutionally awarded Kanter's unsupported and unwarranted request for sanctions in the form of substantial attorney's fees pursuant to 42 Pa.C.S.A. § 2503, without legal or factual basis therefore and without providing the opportunity for Epstein to be heard?

3. Regarding Kanter's claims for breach of contract, did the trial court err in submitting the issue of breach of contract by Epstein to the jury, improperly refuse to enter judgment in favor of Epstein notwithstanding the verdict of the jury, or in the alternative, commit errors in the admission of evidence or instruction to the jury so as to require a new trial?

4. Regarding Kanter's claims of conversion, did the [trial] court err in submitting the issue of conversion by Epstein to the jury, improperly refuse to enter judgment in favor of Epstein notwithstanding the verdict of the jury or, in the alternative, commit errors in the admission of evidence or instruction to the jury so as to require a new trial? Brief for Epstein at 4.

¶ 13 Prior to undertaking an analysis of the merits of the numerous issues raised by the Defendants, we must first determine whether the Defendants have properly preserved their issues for appellate review. In *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998),[6] the Pennsylvania Supreme Court specifically held that "from this date forward, in order to preserve their claims for appellate review, Appellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to [Pennsylvania Rule of Appellate Procedure] 1925." *Lord,* 719 A.2d at 309. "Any issues not raised in a 1925(b) statement will be deemed waived." *Id.* This Court explained in *Riley v. Foley,* 783 A.2d 807, 813 (Pa.Super.2001), that Rule 1925 is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal. This Court has further explained that "a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no Concise Statement at all." *Commonwealth v. Dowling,* 778 A.2d 683, 686–87 (Pa.Super.2001). "Even if the trial court correctly guesses the issues Appellant[s] raise[ ] on appeal and writes an opinion pursuant to that supposition the issue[s][are] still waived." *Commonwealth v. Heggins,* 809 A.2d 908, 911 (Pa.Super.2002).

¶ 14 In this case, the trial court ordered the Defendants to file concise statements of the issues to be raised on appeal. However, the Rule 1925(b) State-

6. Since the *Rules of Appellate Procedure* apply to criminal and civil cases alike, the principles enunciated in criminal cases construing those rules are equally applicable in civil cases. *See McKeeman v. Corestates Bank, N.A.,* 751 A.2d 655, 658 n. 2 (Pa.Super.2000).

ments filed by the Defendants were anything but *concise.* SGR's fifteen-page Rule 1925(b) Statement included fifty-five issues that it purportedly sought to raise on appeal and also incorporated by reference the forty-nine issues raised by Epstein in his Rule 1925(b) Statement. Likewise, Epstein filed a fifteen-page Rule 1925(b) Statement that raised the forty-nine issues, and also incorporated by reference the fifty-five issues raised by SGR.[7] In total, the Defendants identified *104* issues in their Rule 1925(b) Statements. Furthermore, we note that many of the issues identified by each of the Defendants also included multiple sub-issues.

¶ 15 The Defendants' failure to set forth the issues that they sought to raise on appeal in a *concise* manner impeded the trial court's ability to prepare an opinion addressing the issues that the Defendants sought to raise before this Court, thereby frustrating this Court's ability to engage in a meaningful and effective appellate review process. *See Commonwealth v. Steadley,* 748 A.2d 707, 709 (Pa.Super.2000); *see also Commonwealth v. Kimble,* 756 A.2d 78, 80 (Pa.Super.2000). By raising an outrageous number of issues, the Defendants have deliberately circumvented the meaning and purpose of Rule 1925(b) and have thereby effectively precluded appellate review of the issues they now seek to raise.

¶ 16 In this case, the Defendants' voluminous Rule 1925(b) Statements did not identify the issues that the Defendants *actually intended* to raise before the Superior Court. The Defendants' Rule 1925(b) Statements identify significantly more issues than the Defendants could possibly raise on appeal due to the appellate briefing limitations requiring that the Statement of the question involved not exceed fifteen lines, and in any event, one page. *See* Pa.R.A.P. 2116(a). In this case, the trial court was presented with fifty or more issues that each defendant identified for appeal. This forced the trial court to guess which issue the Defendants would actually raise on appeal. This Court has previously explained that "[w]hen a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Commonwealth v. McCree,* 857 A.2d 188, 192 (Pa.Super.2004).

¶ 17 Furthermore, we note that despite the fact that the trial court authored an eighty-five page Opinion, the trial court was, through no fault of its own, unable to provide a comprehensive analysis of the issues it did address due to the preposterous number of issues identified by the Defendants. This too has impeded our ability to undertake a meaningful review of the issues raised by the Defendants on appeal. Accordingly, we must conclude that the Defendants have failed to preserve any of their issues for appellate review.

**7.** As we have done before in such a case, we draw counsel's attention to the following quote:

With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court it is rare that a brief successfully demonstrates that the trial court committed more than one or two reversible errors. ... [W]hen I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them. I do not say that this is an irrebuttable presumption, but it is a presumption nevertheless that reduces the effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not loquaciousness. Aldisert, The Appellate Bar: Professional Competence and Professional Responsibility—A View from the Jaundiced Eye of One Appellate Judge, 11 Cap.U.L.Rev. 445, 458 (1982).

*Estate of Lakatosh,* 656 A.2d 1378, 1380 n. 1 (Pa.Super.1995) *(quoting United States v. Hart,* 693 F.2d 286, 287 n. 1 (3d Cir.1982)).

¶ 18 We further conclude that the Defendants engaged in misconduct when they attempted to overwhelm the trial court by filing Rule 1925(b) Statements that contained a multitude of issues that the Defendants did not intend to raise and/or could not raise before this Court. The trial court expressed its frustration concerning the Defendants' misconduct in its Opinion:

> The Defendants breached their duty of fair dealing with this Court when they: ... entered snap judgments after agreeing in open court [and in writing] to an extension of Rule 227.4; ... and when they filed 1925(b) Statements that raised substantially more issues than they will be permitted to address on appeal because of the limitations set forth in Pa. R.A.P. 2135.

Trial Court Opinion, 2/26/04, at 84–85 (emphasis in original, footnote omitted). We agree with the trial court that the Defendants' conduct breached their duty of good faith and fair dealing with the court. The Defendants have pursued a course of conduct designed to undermine the Rules of Appellate Procedure. In addition to those issues which we have previously addressed, we note that the Defendants' appellate briefs blatantly violate the Pennsylvania Rules of Appellate Procedure. Both of the Defendants have violated Pennsylvania Rule of Appellate Procedure 2116(a), which provides in pertinent part:

> (a) General rule. The statement of the questions involved must state` the question or questions in the briefest and most general terms, without names, dates, amounts or particulars of any kind. It should not ordinarily exceed 15 lines, must never exceed one page, and must always be on a separate page, without any other matter appearing thereon. *This rule is to be considered in the highest degree mandatory, admit-ting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby.*

Pa.R.A.P. 2116(a) (emphasis added). The Defendants' Statements of questions involved do not identify the issues in the briefest and most general terms. Furthermore, both of the Defendants' Statements of issues also exceed 15 lines. We note that the Defendants were only able to contain their Statements of the question on one page through the use of single spacing, decreased font size, and altered margins. The Defendants disregarded Rule 2116(a) despite the fact that the Rule plainly states that it "is to be considered in the highest degree mandatory."

¶ 19 Moreover, Epstein violated Rule 2119 of the Pennsylvania Rules of Appellate Procedure. Rule 2119 provides in pertinent part:

> (a) General rule. The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a) (emphasis added). The argument portion of Epstein's brief is not divided into parts that correspond with his questions to be argued. Furthermore, the sections of Epstein's argument are not presented in the same order as the issues raised in his Statement of questions.

¶ 20 We can only conclude that the motive underlying such conduct is to overwhelm the court system to such an extent that the courts are forced to throw up their proverbial hands in frustration. While such tactics may prove successful in other situations, we are unwilling to suc-

cumb to such chicanery and will not reward such misconduct.

¶ 21 Appeals at 186 and 187 EDA 2003 quashed; appeal at 1161 EDA 2003 withdrawn; judgment No. 924 EDA 2003 affirmed.