**Ahmad v. Aetna, Inc.**

50

*Stephen R. Bolden*, for appellant.

*John M. Elliott, James C. Crumlish, Brian R. Elias,* and *Roger J. Harrington*, for appellees.

FRITSCH, *J.*, May 18, 2012—The matter presently before the court is the appeal of Imtiaz Ahmad, M.D., from this court's order of February 14, 2012, denying appellant's renewed motion for summary judgment and granting appellees' motion for summary judgment. We file this opinion pursuant to Pennsylvania rule of appellate procedure 1925(a).

## BACKGROUND

The present action was commenced by the filing of a complaint ("First Bucks County Action") by Imtiaz Ahmad, M.D. (hereinafter sometimes referred to as "Dr. Ahmad" or "appellant"), against Aetna, Inc., and Dr. Andrew Baskin, M.D. (hereinafter singularly referred to as "Aetna" or "Dr. Baskin" or collectively referred to as "appellees"), on October 24, 2002, asserting state law claims for defamation and intentional interference with present and prospective contractual relationships. On January 13, 2003, appellant filed a second complaint ("Second Bucks County Action")

against appellees asserting state law claims for defamation and intentional interference with present and prospective contractual relationships at Bucks County Docket No. 2003-00245. On September 30, 2003, appellees filed a complaint in the Montgomery County court of common pleas ("Montgomery County Action") asserting claims of against Dr. Ahmad.

By order dated February 2, 2006, the Bucks County actions were consolidated under the above-captioned docket. On March 9, 2006, appellant filed a motion to consolidate the Montgomery County Action with the now consolidated Bucks County actions. On June 22, 2006, the undersigned granted Dr. Ahmad's motion and all three actions were consolidated under the above-captioned docket.

Appellant filed his initial motion for summary judgment in the Montgomery County court of common pleas prior to the transfer of that action to this court. On May 25, 2005, the Montgomery County court of common pleas denied appellant's motion for summary judgment to all counts of appellees' amended complaint except for count III, which asserted a claim for breach of the duty of good faith and fair dealing, as to which it granted summary judgment in favor of appellant.

On April 24, 2008, appellant filed a second motion for summary judgment requesting dismissal of appellees' claims. Following oral argument, the undersigned denied Dr. Ahmad's motion by order on September 5, 2008. Following the litigation of discovery disputes and the issuance of multiple case management orders, Dr. Ahmad filed a renewed motion for summary judgment after all

discovery had been completed and/or for clarification of this court's prior order denying plaintiff's motion for summary judgment on May 20, 2011. On May 23, 2011, appellees filed a motion for summary judgment with respect to Dr. Ahmad's claims. Appellant filed his response to appellees' motion for summary judgment on June 29, 2011. Thereafter, appellees filed their response to Dr. Ahmad's renewed motion for summary judgment on June 30, 2011. Oral argument was held on both motions before the undersigned on October 6, 2011.

The record pertinent to both motions revealed the following:

Dr. Ahmad is a licensed cardiovascular and thoracic surgeon. In 1997, he opened the Comprehensive Vein Treatment Center in Trenton, New Jersey. At the Comprehensive Vein Treatment Center, Dr. Ahmad treated patients afflicted with varicose veins and other similar conditions. Through investigation, Aetna alleges that Dr. Ahmad engaged in a billing scheme in which he would perform cosmetic surgery to remove medically harmless spider veins and then "up-code" the procedure into medically necessary categories for billing purposes. Dr. Baskin, an Aetna Medical Director responsible for the South Jersey geographical area that includes Dr. Ahmad's Treatment Center, learned that appellant's use of a particular billing code was highly irregular in its frequency. As a result of the allegations, Aetna sent Dr. Baskin to Dr. Ahmad's office to inspect his files. Following his visit, Dr. Baskin recommended that Aetna conduct further investigation for possible fraudulent conduct by Dr. Ahmad. At that time, Aetna sent letters to five of Dr. Ahmad's patients indicating that they would be denying

payment for the procedures because they considered them to be cosmetic. Ultimately, Dr. Ahmad was advised that Aetna would not pay for the treatment of spider veins without pre-approval of any proposed procedures.

Kati Berman, an investigator in Aetna's Special Investigations Unit, received a referral from Dr. Baskin to investigate Dr. Ahmad. Ms. Berman continued with the investigation by reviewing the information provided by Dr. Baskin and conducting telephone interviews with some of Dr. Ahmad's patients for whom he had used the billing code in question multiple times. Ms. Berman ultimately concluded that there was clear misrepresentation by Dr. Ahmad that warranted a referral to the New Jersey Medical Board and the Fraud Bureau. On October 13, 2000, Ms. Berman wrote a letter to William Roeder, executive director of the Board of Medical Examiners, indicating that Dr. Ahmad was falsifying medical records to obtain insurance benefits for cosmetic procedures in the amount of $871,400.00. In this letter, Ms. Berman included Aetna's investigative file for the board's use in evaluating Dr. Ahmad's situation. Additionally, Ms. Berman began to initiate procedures to recoup the overpayment from Dr. Ahmad. On February 13, 2001, Michael Stergio, director of Aetna's special investigations unit, wrote a letter to Dr. Ahmad demanding that he reimburse Aetna the sum of $941,400.00 for overbilling relating to the cosmetic spider vein procedures.

The New Jersey board of medical examiners conducted an investigation of Dr. Ahmad, with no input from Aetna. In April 2006, the board decided to administratively close their case involving Dr. Ahmad due to a conflict of interest that had developed involving their expert witness.

On February 14, 2012, in light of the aforementioned factual background, we denied appellant's renewed motion for summary judgment and granted appellees' motion for summary judgment. This timely appeal followed.

## STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

On March 9, 2012, this court ordered appellant file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant served upon the undersigned a 10-page statement of errors (hereinafter "statement") comprised of 28 paragraphs. We believe that appellant's voluminous statement could constitute grounds to dismiss his appeal.

In addressing rule 1925(b), the Superior Court has stated that "[t]he purpose of the rule is to aid trial judges in addressing the issues raised by an appellant on appeal." *Commonwealth v. Otero*, 860 A.2d 1052, 1055 (Pa. Super. 2004). When an appellant is ordered to file a concise statement of matters complained of on appeal under Pa.R.A.P.1925, any issue not contained in that statement is waived on appeal. *Commonwealth v. Rolan*, 964 A.2d 398, 409 (Pa. Super. 2008). Furthermore, when an appellant fails to adequately and concisely identify the issues sought to be pursued on appeal, he or she hinders a trial court in its attempt to prepare pertinent legal analysis on those issues. *Commonwealth v. McCree*, 857 A.2d 188, 192 (Pa. Super. 2004) (citing, *Commonwealth v. Dowling*, 778 A.2d 683, 686-87 (Pa. Super. 2001)). Essentially, "a concise statement which is too vague to allow the court to identify the issue raised on appeal is the functional equivalent of no concise statement at all." *Id.*

In other words, rule 1925(b) is not satisfied merely by submitting a statement of contentions. *Tucker vs. R.M. Tours*, 939 A.2d 343, 346 (Pa. Super. 2007). Instead, the statement must be sufficiently concise and coherent so as to permit a trial court to understand the specific issues being raised on appeal. *Id.* When "appellants raise an 'outrageous' number of issues in their 1925(b) statement, the appellants have 'deliberately circumvented the meaning and purpose of rule 1925(b) and ha[ve] thereby effectively precluded appellate review of the issues [they] now seek to raise." *Id.* (quoting, *Kanter v. Epstein*, 866 A.2d 394, 401 (Pa. Super. 2004)).

We perceive that appellant's 10-page, 28-paragraph statement is sufficiently prolix so as to constitute grounds for dismissing his present appeal. Portions of appellant's non-concise statement bear a closer resemblance to a pleading or memorandum of law than to a concise statement under 1925(b). Instead of framing the issues he wishes to raise on appeal in a concise and organized fashion, Appellant has inundated us with 28 paragraphs of argument concerning every perceived error in this court's decision.

Assuming arguendo that appellant's statement sets forth a sufficient basis for appellate review, we will attempt to address his appeal on the merits. For purposes of discussion, this court perceives that appellant's primary argument concerns our alleged failure to consider evidence of bad faith and malice with respect to appellees. We also observe from appellant's lengthy statement that he claims that this court improperly assumed the role of fact finder, violated the "Nanty-Glo Rule" in making our findings of fact and relied upon inadmissible double hearsay evidence. With

regard to these claims, we did not decide contested issues of material fact when we denied appellant's motion, but merely found an absence of facts supporting appellant's contentions.

## DISCUSSION

In our view, the main thrust of appellant's statement was his contention that this court erred when we failed to consider appellant's evidence of bad faith and malice. Appellant argues that he presented evidence which would have permitted a factual finding that appellee's primary purpose in reporting him to the board was to assist in its collection efforts. We disagree.

Under Pennsylvania Rule of Civil Procedure 1035.2, the standard for summary judgment is:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as matter of law

> (1) Whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P 1035.2.

In order to prevail in his claims, appellant must demonstrate that Aetna acted maliciously and in bad faith when it reported him to the New Jersey board of medical examiners. N.J.S.A. 45:1-35. Specifically, New Jersey law provides that:

A health care entity, health care professional or any other person who provides to the division, a board or the review panel, in good faith and without malice, any information concerning an act by a health care professional which the person has reasonable cause to believe involves misconduct that may be subject to disciplinary action by the division, board or review panel, as applicable, or any information relating to such conduct requested by the division, board or review panel in the exercise of its statutory responsibilities or which may be required by statute, shall not be liable for civil damages in any cause of action arising out of the provision of such information or services.

*Id.* A finding that disciplinary action is warranted by the board is not required for a party to claim the privilege. *Feit v. Horizon Blue Cross & Blue Shield of N.J.*, 897 A.2d 1075, 1081 (N.J. Super. Ct. App. Div. 2006). There, the court held that the immunity is afforded when the person or entity providing the information "has reasonable cause to believe...[the physician or surgeon] may be subject to disciplinary action." *Id.*

We found no evidence that Aetna, a health care entity under the statute, acted in bad faith or with malice during its investigation of Dr. Ahmad. Upon learning that Dr. Ahmad may have been engaging in a fraudulent billing scheme in order to have insurance companies pay for

cosmetic spider vein surgery, Dr. Baskin sought to review Dr. Ahmad's files. As a result of that examination, Dr. Baskin concluded that Dr. Ahmad may have, in fact, been engaging in the alleged fraudulent billing scheme and suggested that additional investigation was needed. He turned the matter over to Aetna's special investigations unit, specifically Kati Berman. Ms. Berman followed up on Dr. Baskin's investigation by conducting telephone interviews with some of Dr. Ahmad's patients who were believed to have received the cosmetic procedure. Ms. Berman reviewed her findings with her superiors and ultimately decided that his conduct necessitated a referral of appellant to the New Jersey medical board and the fraud bureau.

Appellant argues that the privilege does not apply in the present case because Aetna acted in bad faith by failing to conduct a sufficiently thorough investigation. He maintains that Ms. Berman's investigation was not thorough because she was not a licensed medical professional nor did she consult with an independent licensed medical professional before referring Dr. Ahmad to the board. We disagree with appellant's position. It was clear from the uncontested record that Ms. Berman was experienced in conducting investigations of medical professionals. Even if her investigation was less than thorough, we do not believe that this fact, standing alone, would indicate "bad faith."

Appellant also claims that Aetna, along with other health care insurers, when seeking reimbursement from medical providers, uses referrals to the board as a tactic to pressure physicians to repay monies by accusing them of insurance fraud. In support of this argument, appellant presented the deposition testimony of Michael Schoppman, esquire

— appellant's counsel during board proceedings — and Michael Stergio — Aetna's investigator. Dr. Ahmad claims that their testimony indicates that Aetna's real motive for reporting him to the board was to increase its chances of recovering from him. Initially we note that this testimony was of a general nature and that it did not go to any specific acts or statements demonstrating bad faith.

This court does not doubt that a health care insurer often has a financial interest in an underlying matter when it reports a health care provider to the board; however, we do not believe that a financial interest automatically prevents a health care entity, like Aetna, from claiming the statutory privilege. We acknowledge that a health insurer may have a financial interest in addition to a public interest in eliminating fraud when it commences an investigation into a physician or health care provider or reports said individual or entity to the board for further examination. Appellant seemingly would have us rule that a presumption of bad faith arises any time an entity which acts in the public interest by revealing fraud also has a financial involvement in the matter. If we adopted appellant's position, only the most altruistic and independent entities — not a health care insurer or any individual or entity that could derive some ancillary financial benefit — could claim the privilege and the New Jersey statute would be rendered almost meaningless. Consequently, we decline to find that Aetna's concomitant financial concern amounts to bad faith or malice which would deny it New Jersey's statutory protections.

Finally, it is important to note that the case against appellant was "administratively closed." There is no evidence that the board based its decision to close its

investigation of appellant on the basis of his lack of culpability in the alleged fraudulent billing scheme. It is clear from the record in this matter surrounding the investigation of Dr. Ahmad, that Aetna had reasonable cause to believe that appellant may have been subject to disciplinary action as a result of his alleged fraudulent billing scheme. As such, we found that the privilege set forth in N.J.S.A. 45:1-35 was applicable in this situation. Therefore, we determined that all statements made by appellees during the course of their investigation were subject to the protections afforded by the statutory privilege and that appellees were immune from liability as to Dr. Ahmad's claims of defamation and intentional interference with present and prospective contractual relationships.

## CONCLUSION

For the foregoing reasons, we suggest that the present appeal is without merit and should be dismissed.