J. A30040/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| D.A.D. | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| v. | : | | |
| | : | | |
| A.D.H., | : | No. 1016 WDA 2017 | |
| | : | | |
| Appellant | : | | |

Appeal from the Order, June 28, 2017,
in the Court of Common Pleas of Allegheny County
Family Court Division at No. FD07-008810-006

BEFORE:  BOWES, J., STABILE, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED FEBRUARY 27, 2018**

A.D.H. ("Father") appeals *pro se* from the June 28, 2017 order and parenting plan granting sole legal custody of the parties' two minor children, G. and C., to appellee, D.A.D. ("Mother").  For the following reasons, we affirm.

The trial court summarized the relevant facts and procedural history of this case as follows:

> The parties married in 2000, separated in 2007 and divorced in 2010.  They have two children, [G.] and [C.]  Mother filed a Complaint in Divorce on October 2, [2]007.  Father filed a Complaint for Custody on October 11, 2007 and a long, arduous and acrimonious custody battle began.  The case has a long history of the parties fighting over scheduling, extracurricular activities and certain health issues of the children.  As a result, the Court appointed a Guardian Ad Litem (GAL) for the children, and eventually, granted sole legal custody to Mother on a

temporary basis. At time of trial, the parties were following a 2/2/5/5 schedule with Mother having Monday and Tuesday overnights and Father having Wednesday and Thursday overnights. Both parties sought modification of the existing schedule and sole legal custody. Trial was held on October 3, 2016, October 11, 2016 and January 24, 2017.

The Court heard testimony from the parties, Children's Maternal Aunt Doris Olinger, GAL Rebecca K. Fenoglietto, and court[-]appointed psychologist Joseph Greenberg[,] PhD. Father called as witnesses a medical expert, the children's religious educator, their piano teacher and their Irish Dance teacher. The court interviewed the children. Following trial, the [c]ourt considered the 16 factors required in a custody determination in light of the evidence and testimony of the parties. The Court's findings on each of the factors is set forth in the [June 28, 2017] Order and Parenting Plan. Seven of the factors favored Mother. The remaining factors were either not relevant or favored neither party. None of the factors favored Father. The biggest issue of contention was Father's obsession with what he perceived to be a serious weight problem of his daughter, [G.] The parties have bitter, ongoing disagreements over the appropriate medical course for [G.], and the extracurricular activities in which she should participate. Specifically, Father insists that both children participate in Irish dance classes, something neither child nor Mother want to continue.

Trial court opinion, 9/11/17 at 1-2.[1]

As noted, on June 28, 2017, the trial court entered a lengthy order and parenting plan granting Mother sole legal custody of the parties' two minor children. (**See** trial court order and parenting plan, 6/28/17.) On July 11,

---

[1] We note that the trial court opinion does not contain pagination; for the ease of our discussion, however, we have assigned each page a corresponding number.

2017, Father filed a timely **pro se** notice of appeal. On July 12, 2017, the trial court ordered Father to file a **concise** statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b), within 21 days. On July 31, 2017, Father filed a timely Rule 1925(b) statement that spanned 24 pages in length and raised 50 allegations of error. Thereafter, on September 11, 2017, the trial court filed its Rule 1925(a) opinion, incorporating its July 28, 2017 order and parenting plan. (**See** trial court opinion, 9/11/17 at 3.)

Preliminarily, we note that Father's "concise" statement fails to comply with Rule 1925(b). This court has long recognized that "Rule 1925 is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal." **Kanter v. Epstein**, 866 A.2d 394, 400 (Pa.Super. 2004), **appeal denied**, 880 A.2d 1239 (Pa. 2005), **cert. denied**, 546 U.S. 1092 (2006). "The Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). However, the filing of a timely Rule 1925(b) statement alone "does not automatically equate with issue preservation." **Tucker v. R.M. Tours**, 939 A.2d 343, 346 (Pa.Super. 2007), **affirmed**, 977 A.2d 1170 (Pa. 2009). In **Tucker**, a panel of this court explained that:

> [T]his Court has held that when appellants raise an outrageous number of issues in their 1925(b) statement, the appellants have deliberately circumvented the meaning and purpose of Rule 1925(b) and ha[ve] thereby effectively precluded appellate review of the issues [they] now

> seek to raise. We have further noted that such voluminous statements do not identify the issues that appellants actually intend to raise on appeal because the briefing limitations contained in Pa.R.A.P. 2116(a) make[] the raising of so many issues impossible. Further, this type of extravagant 1925(b) statement makes it all but impossible for the trial court to provide a comprehensive analysis of the issues.

*Id.* at 346 (citations and internal quotation marks omitted; brackets in original). Thus, "the Pa.R.A.P. 1925(b) statement must be sufficiently **concise and coherent** such that the trial court judge may be able to identify the issues to be raised on appeal, and the circumstances must not suggest the existence of bad faith." *Jiricko v. Geico Ins. Co.*, 947 A.2d 206, 210 (Pa.Super. 2008) (emphasis added), *appeal denied*, 958 A.2d 1048 (Pa. 2008); *see also Kanter*, 866 A.2d at 401 (finding issues in Rule 1925(b) statements waived where the Court determined that "outrageous" number of issues was deliberate attempt to circumvent purpose of Rule 1925).

Here, we cannot conclude that Father's 24-page, 50-issue statement was so concise and coherent that the trial court was able to conduct a meaningful review of all the issues he sought to raise. (*See* Father's "Matters Complained of in Appeal of the June 28, 2017 Custody Order[,]" 7/31/17 at 1-24.)

Alternatively, even if Father had complied with Rule 1925(b), we could nonetheless dismiss this appeal because his brief fails to adhere to the Pennsylvania Rules of Appellate Procedure. It is well settled that parties to an appeal are required to submit briefs in conformity, in all material respects,

with the requirements of the Rules of Appellate Procedure, as nearly as the circumstances of the particular case will admit. Pa.R.A.P. 2101. "Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant." *In re Ullman*, 995 A.2d 1207, 1211-1212 (Pa.Super. 2010), *appeal denied*, 20 A.3d 489 (Pa. 2011) (citations omitted). We will not advocate or act as counsel for an appellant who has not substantially complied with our rules. *Bombar v. W. Am. Ins. Co.*, 932 A.2d 78, 93 (Pa.Super. 2007) (citation omitted). "This Court may quash or dismiss an appeal if the appellant fails to conform to the requirements set forth in the Pennsylvania Rules of Appellate Procedure." *Ullman*, 995 A.2d at 1211 (citation omitted); *see also* Pa.R.A.P. 2101.

Instantly, Father's brief falls well below the standards delineated in our Rules of Appellate Procedure. On appeal, Father raises 51 claims in his "Statement of the Questions Involved," the overwhelming majority of which allege unsubstantiated claims of bias and incompetence on the part the Honorable Kim D. Eaton, during the custody proceedings. (*See* Father's brief at 6-15.)

Additionally, the "Argument" portion of Father's brief is divided into 16 sections that fail to correspond to the 51 issues he purportedly raises on appeal, in violation of Rule 2119(a). *See* Pa.R.A.P. 2119(a) (requiring that the "argument shall be divided into as many parts as there are questions to be argued."); *see also* Father's brief at 28-79. Despite spanning 52 pages in

length, appellant's "Argument" also fails to contain citation to any legal authority, in violation of Rule 2119(b); nor provides this court with reference to the record, in violation of Rule 2119(c). **See** Pa.R.A.P. 2119(b)-(c).

We further note that Father's brief, excluding appendices, is 87 pages long. The Pennsylvania Rules of Appellate Procedure limit a principal brief to 14,000 words, unless the brief does not exceed 30 pages. Pa.R.A.P. 2135(a)(1). Where the brief exceeds 30 pages, a certificate of compliance with the 14,000 word-count limit must be filed. **See** Pa.R.A.P. 2135(d) (stating that, "[a]ny brief in excess of the stated page limits shall include a certification that the brief complies with the word count limits"). Here, Father's brief is nearly three times the maximum page length prescribed by Rule 2135(a)(1), and yet he has failed to include in his brief a certification that his brief does not exceed 14,000 words.

Lastly, the record indicates that Father's reproduced record also suffers from fatal defects because he failed to designate the contents of the record pursuant to Rule 2154. **See** Pa.R.A.P. 2154(c) (noting that, "[i]n a children's fast track appeal, the appellant shall not later than 23 days before the date fixed by or pursuant to Rule 2185 (service and filing briefs) for the filing of his or her brief, serve and file a designation of the parts of the record which he or she intends to reproduce and a brief statement of issues which he or she intends to present for review.").

Given Father's blatant disregard for our Rules of Appellate Procedure, we will not address all of the issues raised in his "Statement of the Questions Involved." *See Jiricko*, 947 A.2d at 210; *Tucker*, 939 A.2d at 346. However, because this is a Children's Fast Track case, and it was apparent from oral argument that the crux of Father's claim is that the trial court erred in granting sole legal custody of the parties' two minor children to Mother due to what Father perceives to be Mother's complete neglect of G.'s weight problem and the appropriate exercise activities in which G. should engage, we will address this sole contention. (*See* Father's brief at 15-18.) Father is adamant that both children participate in Irish dance classes, something neither child wishes to continue. (*Id.*) Father frames this issue by arguing that Judge Eaton is biased against him and vehemently attacks Judge Eaton's qualifications throughout the duration of his brief. (*See id.* at 18-32.)

Our standard of review in custody matters is well settled.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

> With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.

*G.A. v. D.L*., 72 A.3d 264, 268-269 (Pa.Super. 2013) (citations and internal quotation marks omitted).

Here, the trial court found that, given "Father's literal obsession with [G.'s] weight" and the "emotional damage" it may cause to G.'s self-esteem, Mother is "more likely to maintain a loving, stable, consistent, and nurturing relationship with [G.] adequate for [her] emotional needs[.]" (***See*** Order and Parenting Plan, 6/28/17 at 3-4, § 9.) Upon review, we conclude that the record supports the trial court's credibility determinations.

Specifically, the record belies Father's contention that Mother is unconcerned with G.'s weight gain and failed to undertake measures to ensure G. engages in healthy exercise activities. Mother, an obstetrician gynecologist for 20 years, testified that G. enjoys playing tennis and has indicated she might want to pursue the sport in high school, and is active in cystic fibrosis walks with her best friend S. (Notes of testimony, 10/3/16 at 24, 26.) Mother further testified that G. participates in and enjoys a number of other physical activities, but does not enjoy Irish dance classes:

> Q. What activities does [G.] enjoy doing during your custody time?
>
> A. She does tumbling and horseback riding as well. And she does speed skiing in the winter. She

> just told me this morning, I can't wait until skiing starts. . . .
>
> . . . .
>
> Q. What activities does [G.] not enjoy?
>
> A. Irish dancing.

*Id.* at 27-28.

Mother also testified that she encouraged G. to continue in swimming class and tried to communicate to Father "how beneficial swimming would be for her[,]" but Father did not think it was good exercise, abandoned it, and hired her a personal trainer and dietician. (*Id.* at 19, 63-64.) Lastly, the record reveals that Mother testified at great length about her concerns over G.'s weight gain and diet and the disagreements the parties have had over her weight management. (*See id.* at 60-71.) Notably, Mother testified that she removed G. from a UPMC weight management program that the parties enrolled her in because she thought it was hindering G.'s progress. (*Id.* at 62-63.) Mother also testified that she does not think that the Fitbit activity trackers that Father purchased for the children were a good idea because they were not even at the minimum age to register for the device. (*Id.* at 65.) Based on all of the foregoing, Father's contention that Mother is neglecting G.'s weight issues is not supported by the record and we will not disturb the trial court's credibility determinations on appeal. *See G.A.*, 72 A.3d at 268.

J. A30040/17

Based on the foregoing, we affirm the trial court's June 28, 2017 order and parenting plan granting sole legal custody of the parties' two minor children to Mother.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date:  2/27/2018