Eddie McGAVITT and Cheryl McGavitt, his wife,
Appellees,

v.

GUTTMAN REALTY COMPANY and Guttman Oil Company,
Appellants.

Superior Court of Pennsylvania.

Argued May 3, 2006.

Filed Aug. 29, 2006.

Reargument Denied Nov. 1, 2006.

Susan Y. Yohe, Pittsburgh, for appellants.

Ronald M. Buick, McKeesport, for appellees.

BEFORE: MUSMANNO, TODD, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 Guttman Realty Company and Guttman Oil Company (collectively "Guttman") appeal the trial court's decree finding a prescriptive easement across Guttman's property in favor of Eddie McGavitt and Cheryl McGavitt for use of an access road by heavy trucks delivering coal to waiting barges. Guttman asserts that the court erred because it found that the McGavitts' prescriptive easement arose from the easements granted to prior owners of the McGavitts' property. We agree with Guttman's assertions and conclude accordingly

that the trial court erred. Accordingly, we reverse the court's decree. .

¶ 2 This matter arose following the McGavitts' acquisition of a landlocked parcel abutting the Monongahela River in Speers Borough, Washington County, for use as a loading dock. In accordance with the McGavitts' intended use, as many as 100 heavy trucks daily would traverse an access road over Guttman's property to deliver loads of coal to waiting barges that would then transport their cargo downriver. Although Guttman had allowed prior owners of the McGavitts' parcel to use the road for similar purposes, it had done so by permissive easement granted in exchange for the users' agreement to pave and maintain the road, coupled with the payment of a monthly sum to Guttman. When the McGavitts purchased the property, however, they were unable to reach agreement with Guttman for the use of the road and, consequently, Guttman refused to allow them further access. It is undisputed that the McGavitts' parcel is not accessible by land except over Guttman's road.

¶ 3 In November 2003, the McGavitts filed a complaint in equity seeking an injunction that would require Guttman to allow access to the McGavitts' parcel by heavy trucks. Although the court denied the McGavitts a preliminary injunction, it later convened a non-jury trial to determine whether the McGavitts had obtained an easement by prescription due to the extensive use of the road previously by the their predecessors in title, who, as noted, had also used Guttman's road for commercial purposes. In support of their claim, the McGavitts relied on the testimony of Fred Federer, whose family had built a home in 1947–48 on what later became the McGavitts' parcel. Federer testified that he and his family accessed the property by motor vehicle from 1948 until 1972, when they sold it to one Keith Haney and Haney Barge Lines (Haney). The Federers' former residence was then razed. In 1987, Haney merged with Campbell Transportation Company (Campbell) which, in turn, sold the property to the McGavitts in 2002. Both Haney and Campbell had accessed the disputed parcel continuously with heavy trucks over Guttman's access road. Nevertheless, the evidence established that such access was permissive, having been arranged with Guttman in writing.

¶ 4 Following the non-jury trial, the trial court, the late Honorable David L. Gilmore, entered a decree in favor of the McGavitts accompanied by Findings of Fact and Conclusions of Law. In its Findings and Conclusions, the court relied upon the testimony of Fred Federer, concluding that the extended time period over which his family had accessed the disputed parcel established an easement by prescription. Findings of Fact and Conclusions of Law, 6/29/04, at 3. Although Judge Gilmore acknowledged that the Federers' use of the property had not been of the same nature and quantity as that sought by the McGavitts, he concluded that the McGavitts' proposed use was permissible, nevertheless as a reasonable increase in the scope of a prescriptive easement the Federers had established. The court determined accordingly that that same prescriptive easement entitled the McGavitts to the heavy commercial access they sought.

¶ 5 Following trial, Judge Gilmore died and the trial court reassigned the matter to the Honorable Paul Pozonsky. Judge Pozonsky denied Guttman's motion for post-trial relief, and Guttman then filed its notice of appeal. To assist with preparation of its opinion, the court ordered Guttman to file a Concise Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P. 1925(b). Although Guttman complied, the Statement it filed consisted of six

pages. Deeming the length of the Statement inappropriate, Judge Pozonsky did not address the merits of the underlying claims in his opinion, but instead, urged this Court to find waived any questions Guttman might raise on appeal for failure to comply with the Rules of Court.

¶ 6 Guttman now raises the following questions for our consideration:

A. Whether Guttman's appeal should be dismissed because its Concise Statement of Matters Complained of Pursuant to Pa.R.A.P. 1925(b) included a brief summary of its position below each of the four issues to be raised on appeal[?]

B. Whether the Court erred when it found, as a matter of fact, that Haney used the access road in question from 1972 until approximately 2002, when Haney sold the real estate to McGavitt, when, in fact (1) in 1987, Haney was succeeded as owner of the property by Campbell Barge Lines, which, in turn, sold it to McGavitt in 2002; and (2) Haney used the road for no more than 15 years[?]

C. Whether the Court erred when it found, as a matter of fact, that no one had ever been denied access to the road in question, when in fact, Guttman denied access to the Campbell Transportation Co., Inc., as well as to Haney and the Alan Stone Company, except pursuant to express written permission requiring the user to pave and maintain the road[?]

D. Whether the Court erred when it found, as a matter of law, that the use of the access road in question for commercial purposes to haul heavy materials and equipment in large trucks is a normal and natural evolution of the prescriptive easement which was created by the adverse use of the road as a driveway by residents of a house[?]

E. Whether the Court erred when it seemingly bootstrapped Haney's use of the road by permission to conclude that the use of the road by commercial trucks hauling heavy loads is a normal and natural evolution of the use of the road by passenger vehicles[?]

Brief for Appellants at 3.

¶ 7 Before reaching Guttman's substantive questions, we pause to dispose of the issue posed by question A concerning the adequacy of Guttman's Rule 1925(b) statement. The trial court, in its Rule 1925(a) opinion advocated that we quash Guttman's appeal based on the length of its statement, concluding that, at six pages, the statement was too voluminous, rendering it "impossible for [the trial court] to provide a comprehensive analysis of the issues." Trial Court Opinion, 10/25/05, at 3. In support of its position, the court relied upon our decision in *Kanter v. Epstein*, 866 A.2d 394 (Pa.Super.2004), a case in which we deemed the defendants' Rule 1925(b) statements "anything but concise" and, consequently, found the issues they sought to raise waived. 866 A.2d at 400–01. Consistent with our resolution in *Kanter*, the court refused to discuss the issues Guttman raised and requested that we dismiss its appeal based upon the length of the statement. Trial Court Opinion, 10/25/05, at 3.

¶ 8 Upon review of Guttman's Rule 1925(b) statement, we find *Kanter* inapposite. In that case, we grounded our treatment of the parties' appeal upon both the extraordinary length of their statements (15 pages each) and the number of issues raised in each (55 and 49, respectively), which we characterized as "preposterous." *Kanter*, 866 A.2d at 400–01. We noted, in

addition, that although the trial court had attempted to respond to the issues raised in an opinion 85 pages long, it was, nonetheless, "unable to provide a comprehensive analysis of the issues[.]" *Id.* at 401. We determined accordingly that "[t]he Defendants [had] pursued a course of conduct designed to undermine the Rules of Appellate Procedure[,]" and, in so doing, had "breached their duty of good faith and fair dealing with the court." *Id.* at 402.

¶ 9 In this case, by contrast, we are not compelled to reach so drastic a conclusion. Guttman's Rule 1925(b) statement, while six pages long, raises only four issues. Moreover, the statement's length is attributable almost entirely to the discussion following each issue that counsel elected to provide. The issues as stated would themselves fit comfortably on a single page. Although we find Guttman's inclusion of discussion in a Rule 1925(b) statement to be superfluous, we do not consider it a burden upon the trial court such as to preclude its comprehensive analysis of the four issues actually raised. Accordingly, we decline the trial court's suggestion that we deem waived all of Guttman's issues on appeal and we proceed to the merits of the questions stated.

¶ 10 Upon review of Guttman's remaining five questions, we note that questions B and C, and D and E, respectively, address the same underlying issues. The issue set forth in questions B and C, however, concerning permissive use from 1972 to 2002, would be implicated only had the trial court found a prescriptive easement arising from that use. The court did not make such a finding, however; accordingly, we need not consider Guttman's questions as they relate to it. Rather, we confine our analysis to the issue raised in questions D and E; *i.e.,* whether the trial court erred in concluding that the McGavitts' proposed use of the access road constitutes a natural evolution of any prescriptive easement that arose in favor of the Federers between 1948 and 1972. Because questions D and E both address facets of this question, we shall address them together.

¶ 11 Guttman asserts that the trial court erred in determining, as it did, that the McGavitts' proposed use of carrying heavy loads in large trucks over Guttman's access road constituted a "normal evolution" of any prescriptive use established by the Federers. Brief for Appellants at 14. We agree with Guttman's assertion. Although we acknowledge that "a reasonable increase in degree of use is ... permissible[,]" *see* Findings of Fact and Conclusions of Law, 6/29/04, at 3 (quoting *Hash v. Sofinowski,* 337 Pa.Super. 451, 487 A.2d 32, 36 (1985)), the use the McGavitts would make of Guttman's access road implicates more than just an "increase in degree." Rather, it appears to constitute a substantially different and more rigorous use than ever imposed by the Federers, likely to impose far more cost on Guttman. Fred Federer's testimony makes these differences evident. Although the witness was familiar with the uses of the road as early as the 1930's, (even before his father built a house there), he made no mention of heavy commercial use during that period. Indeed, his recollection extended only to cars and pickup trucks. N.T., 3/17/04, at 6, 8–9.

¶ 12 We have recognized that "the degree of use of a prescriptive easement may increase in certain circumstances to accommodate the normal evolution of the dominant tenement where reasonable[.]" *Hash,* 487 A.2d at 36. Nevertheless, "[t]he extent of an easement created by prescription is fixed by the use through which it was created." *Id.* at 34 (quoting RESTATEMENT OF PROPERTY § 477 (1944)). · Consequently, expansion of such use and the

extent to which it may be treated as "normal evolution," is necessarily limited. *See id.* at 34 ("[T]he scope of such an easement must necessarily be a function of the continued, adverse use by which it was generated and is thus limited to that of the prescriptive period."). As recognized by the Restatement, to determine whether a particular use is permissible under a prescriptive easement "a comparison must be made between such use and the use by which the easement was created with respect to (a) their physical character, (b) their purpose, (c) the relative burden caused by them upon the servient tenement." *Id.* at 35 (quoting RESTATEMENT OF PROPERTY § 478).

¶ 13 Balancing these factors in other cases, our courts have uniformly declined to accept conversions from private residential use to commercial use as "normal evolution" of the dominant tenement. *See Shaffer v. Baylor's Lake Ass'n.*, 392 Pa. 493, 141 A.2d 583, 587 (1958) (holding that prescriptive right of family to use lakefront property for swimming, fishing and watering cattle, and use of dock for private boating did not include the right to use any part of the lake for commercial boating or other commercial purposes); *see also Gibbens v. Weisshaupt*, 98 Idaho 633, 570 P.2d 870, 875–76 (1977) (cited with approval in *Hash*) (reversing trial court order that allowed expansion in scope of prescriptive easement from single-family residential and ranching access to multi-family and commercial use). The rationale underlying such decisions is simple; prescription imposes a burden upon the "servient tenement" over which the easement runs and effectively acts as a penalty upon the rightful owner of the land. *See Gibbens*, 570 P.2d at 875. Considerations of fundamental fairness thus dictate that "any changes in the use of a prescriptive easement cannot result in an unreasonable

increased burden on the servient estate and ... the increase in use must be reasonably foreseeable at the time the easement is established." *Hash*, 487 A.2d at 35 (quoting *Gibbens*, 570 P.2d at 876).

¶ 14 Applying these principles to the case before us, we cannot conclude that the proposed use to which the McGavitts would put the easement here constitutes "normal evolution" of the use established by the Federers during the prescriptive period. As noted above, the Federers' use, (like the prior uses at issue in *Shaffer* and *Gibbens* ), was limited to ingress and egress by a single family and use consistent with the family's occupancy of their own land. The burden imposed upon the access road by motor vehicles going to and from a single family residence is not comparable in any material sense to that of heavy trucks making dozens of deliveries every day, loading coal or other cargo onto waiting barges. Under the latter scenario, the size and weight of the vehicles alone would doubtless affect the access road in ways not contemplated in residential use. We need not engage in leaps of faith to conclude that such a burden motivated Guttman to require prior commercial users to maintain the road and pay for its use. Such use cannot be deemed merely a matter of degree. Nor can it be considered "normal evolution" under these circumstances. Nothing in the record establishes that the Federers used the easement in the manner contemplated by the McGavitts; nor can heavy commercial and industrial use be considered a reasonably foreseeable extension of access to a single-family residence during the prescriptive period. We conclude accordingly that the trial court committed reversible error in granting a prescriptive easement to the McGavitts' for the intended commercial and industrial uses at issue here.

¶ 15 For the foregoing reasons, we reverse the trial court's decree.

¶ 16 Decree **REVERSED.** Case **REMANDED** to the trial court. Jurisdiction **RELINQUISHED.**