J-A07018-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| WARREN HALSEY, SCOTT A. WILLIAMS AND DANIELE C. WILLIAMS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROGER SWINGLE, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF REBECCA DEFREHN, LITTS & SONS STONE CO., INC. GRASSIE & SONS, INC., CHARLES SIMS, DOROTHY SIMS, CHARLES SIMS, JR., AND NANCY M. MEDALIS | : | No. 1214 EDA 2021 |
| ROBERT SWINGLE, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF REBECCA DEFREHN | : | |
| | : | |
| v. | : | |
| | : | |
| MORRIS WILLIAMS, DECEASED, OF STERLING TOWNSHIP, AND HIS HEIRS AT LAW, AND SUCH OTHER PERSONS CLAIMING BY, UNDER OR THROUGH HIM, SCOTT WILLIAMS AND DANIELLE C. WILLIAMS | : | |
| | : | |
| APPEAL OF: WARREN HALSEY, SCOTT A. WILLIAMS AND DANIELLE C. WILLIAMS | : | |

Appeal from the Judgment Entered October 7, 2021
In the Court of Common Pleas of Wayne County Civil Division at No(s):
362--CV-2015 & 136-CV-2016

BEFORE: DUBOW, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JULY 1, 2022**

Warren Halsey, Scott Williams, and Daniele Williams ("Appellants") appeal from the order granting a prescriptive easement in favor of Robert Swingle, individually and as the Executor of the Estate of Rebecca DeFrehn, as well as in favor of Litts & Sons Stone Co., Inc., Grassie & Sons, Inc., Charles Sr. and Dorothy Sims, Charles W. Sims, Jr. and Nancy M. Medalis ("Appellees"). We affirm in part and reverse in part.

This case concerns a complicated property dispute involving neighboring properties. The subject of the dispute is what has been described as a dirt road that runs behind the parties' properties ("Access Road"). It appears that there is no way to access the properties from the parallel public road except by the disputed Access Road.

Over the years, the Swingle property was used as a dairy farm, although the property contained a sparsely utilized quarry. That changed in 2011, when Swingle leased the farm to Litts & Sons and Grassie & Sons ("Lessees"), who began using the property as a commercial quarry. Traffic increased exponentially on the Access Road and Appellants complained of noise and garbage build-up on their properties.

Appellants filed a complaint for declaratory relief, claiming ownership of the Access Road. Swingle countered with an action to quiet title, asserting ownership of the Access Road due to adverse possession. These two actions were tried together in a bench trial in April and November of 2018. Counsel for Lessees did not appear. On January 29, 2019, the trial court issued a memorandum opinion and order, finding Appellees had established a

prescriptive easement over the Access Road, but found Lessees had committed trespass.

The trial court made the following findings of fact:

1. [Appellant] Warren Halsey (hereinafter, "Halsey") is an adult individual residing at 752 Maple Grove Road, Moscow, Wayne County, Pennsylvania 18444.

2. [Appellant] Scott A. Williams (hereinafter, "S. Williams") is an adult individual residing at 8670 Rue Court, Owings, Maryland 20736.

3. [Appellant] Danielle C. Williams (hereinafter, "D. Williams") is an adult individual residing at 292 Bortree Road, Moscow, Wayne County, Pennsylvania 18444.

4. [Appellee] Roger Swingle (hereinafter, "Swingle"), individually and as Executor of the Estate of Rebecca DeFrehn, is an adult individual residing at 179 Callapoose Road, Moscow, Wayne County, Pennsylvania 18444.

5. [Appellee] Lifts & Sons Stone Co., Inc. (hereinafter, "Lifts & Sons") is a corporation organized and existing under the laws of this Commonwealth with a physical address of 19 Primrose Drive, Spring Brook Township, Lackawanna County, Pennsylvania 18444.

6. [Appellee] Grassie & Sons, Inc. (hereinafter, " Grassie & Sons") is a corporation organized and existing under the laws of this Commonwealth with a registered office address of 10 Mount Cobb Highway, Lake Ariel, Wayne County, Pennsylvania 18436.

7. [Appellees] Charles Sr. and Dorothy Sims (hereinafter, "The Sims") are adult individuals residing at 768 Maple Grove Road, Building D, Moscow, Wayne County, Pennsylvania 18444.

8. Defendant Charles W. Sims, Jr. (hereinafter, " Sims Jr.") is an adult individual residing at 768 Maple Grove Road, Building D, Moscow, Wayne County, Pennsylvania 18444.

9. [Appellee] Nancy M. Medalis (hereinafter, "Medalis") is an adult individual residing at 325 Steele Road, Feasterville-Trevose, Pennsylvania 19053.

10. Halsey is the owner of a 14.82- acre parcel of real property located in Sterling Township, Wayne County, Pennsylvania more particularly identified at Wayne County Tax Map No. 26-0-0340-0029-0010. Halsey acquired this parcel by virtue of a deed dated May 28, 1999 and recorded in Wayne County Record Book 1515 at page 21.

11. S. Williams is the owner of a . 2-acre parcel of real property located at 768 Maple Grove Road, Sterling Township, Wayne County, Pennsylvania, more particularly identified at Wayne County Tax Map No. 26-0-0340-0031. S. Williams originally acquired an interest in this parcel by virtue of a deed dated June 12, 2001 and subsequently acquired full ownership interest of this parcel by virtue of a deed dated May 31, 2014 and recorded in Wayne County Record Book 4813 at page 228.

12. S. Williams is also the owner of a . 997- acre parcel of real property located at 768 Maple Grove Road, Sterling Township, Wayne County, Pennsylvania, more particularly identified as Wayne County Tax Map No, 26-0-0340-0032. S. Williams originally acquired an interest in this parcel by virtue of a deed dated July 28, 2001 and subsequently acquired full ownership interest of this parcel by virtue of a deed May 31, 2005 and recorded in Wayne County Record Book 4813 at page 230.

13. D. Williams is the owner of a 33.74- acre parcel of real property located in Sterling Township, Wayne County Pennsylvania, more particularly identified at Wayne County Tax Map No. 26-0-0340-0036.0004. D. Williams acquired this parcel by virtue of a deed dated February 3, 1997 and recorded in Wayne County Record Book 1227 at page 295.

14. Rebecca DeFrehn was the owner of a 135.22- acre parcel of real property located in Sterling Township, Wayne County, Pennsylvania, more particularly identified at Wayne County Tax Map No. 26-0-0340-0028. Rebecca DeFrehn (then known as Rebecca Swingle) originally acquired an interest in said parcel with her then-husband, Wayne Swingle, by virtue of a deed dated February 26, 1959, and subsequently acquired sole ownership of said parcel by virtue of a deed dated October 3, 2000 and recorded in Wayne County Record Book 1697 at page 198.

15. Rebecca DeFrehn passed away in 2006.

16. Swingle is the son of Rebecca DeFrehn and was appointed to serve as the Executor of the Estate of Rebecca DeFrehn (hereinafter, "DeFrehn Estate").

17. Swingle is also the owner of a 2- acre parcel of real property located in Sterling Township, Wayne County, Pennsylvania, more particularly identified at Wayne Co. Tax Map No. 26-0340-0028.0004, which Swingle owns with Medalis. Swingle and Medalis acquired said parcel by virtue of a deed dated March 14, 2007 and recorded in the Wayne County Record Book 3273 at page 120.

18. The Sims are owners of a 10-acre parcel of real property located in Sterling Township, Wayne County, Pennsylvania, more particularly identified at Wayne County Tax Map No. 26-0-0340-0028-0001. The Sims initially acquired said parcel by virtue of a deed dated October 1, 1977 and recorded in Wayne County Record Book 341 at page 298.

19. Sims Jr. is the owner of a 4.25-acre parcel of real property located in Sterling Township, Wayne County, Pennsylvania, more particularly identified at Wayne County Tax Map No. 26-0-0340-0028-0002. Sims Jr. initially acquired said parcel by virtue of a deed dated October 20, 1979.

20. Medalis is the owner of two (2) parcels of real property located in Sterling Township, Wayne County, Pennsylvania: ( 1) a 2.72-acre of real property more particularly identified at Wayne County Tax Map No. 26-0-0340-0028-003, which Medalis acquired by virtue of a deed dated January 13, 2005 and recorded in Wayne County Record Book 2700 at page 319, and (2) a 2- acre parcel of real property more particularly identified at Wayne County Tax Map No. 26-0-0340-0028.0004 and which parcel was acquired by Medalis by virtue of a deed dated March 14, 2007 and recorded in Wayne County Record Book 3273 at page 120.

21. S. Williams', D. Williams', and Halsey's respective properties are located along Maple Grove Road and Bortree Road in Sterling Township, Wayne County, Pennsylvania.

22. In or about 1964, Zelda and Harold Williams (hereinafter, "Zelda W."), one of S. Williams' predecessors in title, agreed to allow access from Maple Grove Road to the properties owned and/or used by the predecessors in title of Swingle.

23. The written reference to this agreement appears in a deed from Zelda W. to William E. and Mary R. Ehrenstrasser

(hereinafter, "The Ehrenstrasser's" [sic]), which deed is dated January 25, 1964 and recorded in Wayne County Deed Book 220 at page 234.

24. In the deed described in the above paragraph, the access route is described as being twenty feet (20') wide.

25. One-half the width of this access -ten feet ( 10')- would have been located on Zelda W's property, while the remaining ten feet ( 10') of the width of the access route would have been located on property owned at the time by Frank and Betty Morris, which property today is owned by Halsey.

26. Zelda W. was unable to convey the additional ten feet ( 10') over the Halsey property that she did not own, and therefore the legal import of Deed Book 220 at Page 2345 was to create a ten foot ( 10') wide right of way for the benefit of the Ehrenstrasser's [sic].

27. Over the years, the Swingles made use of the existing private driveway to get out to Maple Grove Road and all of their use was for ingress and egress to their property.

28. In 2011, the Swingle parent tract began being used actively as a quarry, causing heavy equipment, machinery, and trucks to access the Swingle site. Thus, the use of the driveway changed substantially over the years from 2011 to the present time.

29. The increased use of the access route has resulted in dust and noise coming onto S. Williams', D. Williams', and Halsey's properties.

30. Lifts & Sons and Grassie & Sons have also caused the access route to be raised by at least six inches (6"), which has led to water, mud, and silt running onto S. Williams', D. Williams', and Halsey's respective properties.

31. Furthermore, the quarry usage is causing trash to be dumped onto S. Williams', D. Williams', and Halsey's respective properties.

32. Ultimately, the expansion of the quarry activity resulted in S. Williams, D. Williams, and Halsey to file a Complaint (Wayne Co. Docket No. 362- CV-2015).

33. S. Williams, D. Williams, and Halsey amended their Complaint to include Medalis, The Sims, and Sims Jr. for the sole purpose of being an indispensable party in Plaintiffs' Action for Declaratory

Relief. They have not caused any damage to S. Williams', D. Williams', and Halsey's properties, and accordingly S. Williams, D. Williams, and Halsey are not seeking compensation from The Sims, Sims Jr., and Medalis. The Amended Complaint was filed November 2, 2015.

34. Swingle countered by filing an action to quiet title, filed to Wayne Co. Docket No. 136- CV-2016, claiming that he owned the access route in question via adverse possession.

35. 136-CV-2016 and 362-CV-2015 were consequently consolidated.

36. A Non-Jury trial started on April 3, 2018. On May 11, 2018, an Order from this Court stated that all parties shall be prepared to present on both cases and have all witnesses available and present for the trial that was to be continued on July 27, 2018.

37. On September 24, 2018, this Court issued an Order stating that Counsel should again be prepared to present on both cases and have all witnesses available for the last day of trial continued to November 2, 2018.

38. On November 2, 2018, Counsel for Litts & Sons and Grassie & Sons did not appear for trial.

39. On November 16, 2018 it was the Order of this Court that the matter was taken under advisement and if the parties wish, they may submit an outline of issues and conclusion of law within fourteen (14) days

Tr. Ct. Op., 1/29/19 at 2-7.

After the court issued its January 29, 2019 order, it scheduled an additional hearing to determine damages for trespass, but Appellants withdrew their damages claim. Thereafter, the court issued a May 24, 2021 order rendering the remaining aspects of the January 29, 2019 order final and judgment was entered on the docket reflecting the same on October 7, 2021.

This timely appeal followed.[1] Appellants filed a Pa.R.A.P.1925(b) statement and the court filed a Pa.R.A.P. 1925(a) response incorporating the reasoning set forth in its earlier opinion.

Appellants present the following issues:

1. Did the trial court err in concluding that Appellees met their burden of proving a prescriptive easement of twenty feet in width over the properties of Scott Williams and Daniele Williams when the trial court did not find that each of the Appellees continuously used a right-of-way twenty feet in width on the Williams properties for at least twenty-one years, and the testimony and evidence show that none of the Appellees used a right-of-way more than ten feet in width on the Williams properties prior to 2011?

2. Did the trial court err in failing to limit any prescriptive easement grant to Appellees to residential use when the use of the subject access route was limited to residential use during each Appellee's prescriptive period and allowing commercial use of the subject access route creates an unreasonable burden on the subject access route and the Williams properties by substantially increasing the traffic, noise, dust, garbage, and water run-off?

_____

[1] Although Appellants' initial case and Swingle's counterclaim were never formally consolidated, the trial court treated them as such for purposes of trial. The court issued a single order, listing both docket numbers, and Appellants filed a single notice of appeal. Appellants report that they were directed to file only a single notice by the prothonotary. On August 13, 2021, this Court issued a rule to show cause why the appeal should not be quashed pursuant to **Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018) ("the proper practice under Rule 341(a) is to file separate appeals from an order that resolves issues arising on more than one docket. The failure to do so requires the appellate court to quash the appeal"). After Appellants filed a response, this Court discharged the rule and referred the matter to this panel. We decline to quash the instant matter because the prothonotary's direction misled Appellants. **See Commonwealth v. Larkin**, 235 A.3d 350, 354 (Pa.Super 2020) (*en banc*) (where a party is misinformed about appellate rights a breakdown in court operations has occurred and this Court will decline to quash).

Appellants' Br. at 8.

Due to the interrelated nature of Appellants' issues, we will discuss them in tandem. In their first issue, Appellants claims that the trial court erred by concluding that Appellees established that each Appellee utilized the access road in an adverse, open, notorious, continuous, and uninterrupted manner for a period of at least 21 years sufficient to establish a prescriptive easement. According to Appellants, the court never made sufficient factual findings to support this determination.

Further, Appellants contend that even if Appellees established an easement by prescription, they did not establish that it was 20 feet wide. Appellants emphasize that the limited testimony presented at trial pointed to an access road with a narrower width. Appellants assert that only one witness, who hadn't lived at the property since he was a child, testified that two trucks could pass on the road and therefore opined that the Access Road was about 20 feet wide. In support of their argument, Appellants' point to **Hash v. Sofinowski**, 487 A.2d 32 (Pa.Super. 1985) (limiting size of a prescriptive easement to the actual use of the land during the prescriptive period and holding anticipated future use was insufficient to expand easement). Further, Appellants maintain that the court erroneously ordered four inches of "ditching" surrounding the Access Road when there had not been any ditching along the road at any point and no party requested ditching.

In their second issue, Appellants claim that the trial court erred by declining to limit the use of the Access Road to residential purposes only. The

Swingle farm only began to be used as an active quarry in 2011, well after the required 21 years needed for an easement. Thus, Appellants maintain that any prescriptive easement should be restricted to residential access. Appellants emphasize that the Lessees' commercial use of the Access Road has placed an unreasonable burden on the surrounding properties including increased traffic, noise, dust, garbage, and water run-off.

Conversely, Appellees claim that the trial court's decision was supported by the record. The evidence established that the Appellees, their families, and guests used the Access Road to access their homes for over 50 years. Roger Swingle testified that his family farm used the access road continuously and that two vehicles could pass each other on the road at the same time. Therefore, Appellees contend that Swingle aptly concluded that the Access Road must be at least 20 feet. Swingle also testified that his family had maintained the Access Road over the years by putting in drainage and cutting back brush. Without the Access Road, Swingle testified that his family would not be able to access their property. Charles Sims likewise testified regarding his similar use of the Access Road. Appellees point out that Appellants' own surveyor testified that the Access Road was at least 12 to 16 feet wide, and the entrance was even wider.

In equity matters, the trial judge "is the ultimate fact-finder." **Gurecka v. Carroll**, 155 A.3d 1071, 1075 (Pa.Super. 2017) (*en banc*) (citation omitted). We will not disturb the findings of fact unless they are "unsupported by competent evidence or are demonstrably capricious." **Id.** (citation

omitted). We similarly leave the final decree undisturbed unless the trial judge committed an error of law or abuse of discretion. *Id.* If there is a prayer for general relief, an equity court may "grant broader relief than that specifically requested" so long as that relief is "consistent with and agreeable to the case pleaded and proven." *Karpieniak v. Lowe*, 747 A.2d 928, 932 (Pa.Super. 2000).

"A prescriptive easement is a right to use another's property which is not inconsistent with the owner's rights and which is acquired by a use that is open, notorious, and uninterrupted for a period of 21 years." *McNaughton Properties, LP v. Barr*, 981 A.2d 222, 225 n.2 (Pa.Super. 2009). To establish a prescriptive easement, the user must prove "(1) adverse, (2) open, (3) notorious, (4) continuous and uninterrupted use [of land] for a period of twenty-one (21) years." *Village of Four Seasons Ass'n, Inc. v. Elk Mountain Ski Resort, Inc.*, 103 A.3d 814, 822 (Pa.Super. 2014). The burden of proving these elements falls on "the party asserting the easement" by "clear and positive proof." *Id*. (citation omitted).

Further, "the degree of use of a prescriptive easement may increase in certain circumstances to accommodate the normal evolution of the dominant tenement where reasonable[.]" *Hash*, 487 A.2d at 36. However, a prescriptive easement is as a rule limited to the use that created it. *McGavitt v. Guttman Realty Co.,* 909 A.2d 1, 4-5 (Pa.Super. 2006). When determining whether an increased use is permissible "a comparison must be made between such use and the use by which the easement was created with respect to (a) their

physical character, (b) their purpose, (c) the relative burden caused by them upon the servient tenement." *Id.* (citation omitted). Significantly, "our courts have uniformly declined to accept conversions from private residential use to commercial use as 'normal evolution' of the dominant tenement." *Id.* (citation omitted).

In this case, the trial court determined that the evidence established a prescriptive easement in favor of Appellees:

> The testimony throughout the non-jury trial evidences that the original land owned by Rebecca DeFrehn and the properties subdivided therefrom, have only one access roadway, and that this roadway is located in the location of a twenty foot (20') right of way set forth in two (2) lots subdivided from a larger tract of land owned by S. Williams' predecessor in title. These two (2) lots were to be accessed by a right of way twenty feet (20') in width which was subsequently relied upon and referenced by the surveyor, James Hinton, in preparing and submitting subdivision maps to Sterling Township and the Wayne County Planning Commission. Specifically, the twenty foot (20') right-of-way to these original (2) lots became the access width of the roadway to property owners, The Sims, Sims Jr., and Medalis. Swingle's use of the land is therefore not exclusive due to various other individuals also using the land as their access way to their respective properties, thus ruling out any adverse possession claims.
>
> Additionally, testimony given during trial further strengthens Swingle's argument for prescriptive easement. Swingle has maintained the access road for approximately fifty-nine ( 59) years. He has plowed snow, drained water, and cleared obstacles for well past the statutory requirement of twenty-one (21) years. Swingle was never told not to use the access road and S. Williams never acted as owner of the roadway since its inception. Also, the roadway is the only way to access Swingle's land as well as the Sims, Sims Jr., and Medalis property. Swingle's use of the roadway has been open, hostile, and notorious well within the statutory time period. Therefore, Swingle, individually, his successors, heirs and assigns have a prescriptive easement

> commencing at Township Road 317-Maple Grove Road being twenty feet (20') in width, continuing along the warrantee line of the Jacob Downing Warrant (now the property of Halsey) and to the lands now owned by the DeFrehn Estate.

Tr. Ct. Op., at 9.

Ample evidence supported the trial court's determination that Appellees established a prescriptive easement on the Access Road. As noted, the trial court credited Swingle's trial testimony as establishing the open, hostile and notorious use of the Access Road, for a period exceeding 21 years, to access Appellees' land-locked properties from the public road.

Appellants invite this Court to reweigh the evidence by arguing that the trial testimony did not credibly establish a prescriptive easement 20 feet wide. We must decline. **See Makozy v. Makozy**, 874 A.2d 1160, 1168 (Pa.Super. 2005). The court aptly considered the testimony of Roger Swingle who described the access road as being wide enough to allow two cars to pass simultaneously and thus 20 feet in width. Appellants have cited nothing that would empower us to override the trial court's credibility determinations.

Appellants' argument that this Court's decision in **Hash** supports their claim is also unavailing. In **Hash**, this Court reversed the trial court's determination that the width of a prescriptive easement could increase over the prescriptive time. **See Hash**, 487 A.2d at 34. Conversely, here, the court did not rely on evidence of the width of the Access Road at the end of the prescriptive period alone. It instead credited the testimony of Swingle, who testified his memory of the width of the Access Road as it existed toward the

beginning of the prescriptive period. Thus, we discern no abuse of discretion in the trial court's conclusion that Appellants established a prescriptive easement of 20 feet. *Gurecka*, 155 A.3d at 1075.

However, we do take issue with the court's decision to order four feet of unrequested "ditching" on the side of the Access Road. As noted by Appellants, no party requested the "ditching" and no party had ever created any such "ditching" during the prescriptive period. Hence, we hold that the court erred by ordering relief that was not agreeable to the case pleaded and proved by the parties. *See Karpieniak*, 747 A.2d at 930. Accordingly, we reverse that potion of the trial court's order requiring "ditching."

We also find error in the court's order to the extent that it permits expanded commercial use of the Access Road. As the court acknowledges in its findings of fact, increased commercial use of the Access Road did not occur until 2011, with the leasing of the Swingle's property to Lessees for purposes of commercial use of the Quarry. Thus, the commercial use commenced well after the 21-year prescriptive period. Moreover, the court also recognized that such commercial use caused an exponential shift in the nature and volume of traffic on the Access Road to such an extent that the court found the Lessees had committed trespass. The court recognized that the commercial use of the Access Road had caused a substantial burden on Appellants' properties due to increased noise, trash, and water runoff. While the increased use of a prescriptive easement may be permissible in certain circumstances as a

"natural evolution," a shift from residential use to commercial use is generally not a permissible increase. *See McGavitt*, 909 A.2d at 5.

In *McGavitt*, the use of an access road had changed from primarily residential, for purposes of ingress and egress, to heavy commercial use involving heavy trucks making dozens of daily deliveries. *See id.* Our Court there concluded "that heavy commercial and industrial use [cannot] be considered a reasonably foreseeable extension of access to a single-family residence during the prescriptive period." *Id.* This Court thus held that "the trial court committed reversable error in granting a prescriptive easement." *Id.* Likewise, in the instant case we conclude that the Lessees' increased commercial use of the Access Road cannot be considered the "normal evolution" of the use. Accordingly, we reverse the trial court's order to the extent that it grants a prescriptive easement for purposes of commercial use.

Order affirmed in part, reversed in part, and case remanded for proceedings not inconsistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/1/2022

- 15 -