J-A06037-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DELLAPOSTA PROPERTIES, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PACKAGING CORPORATION OF AMERICA AND THREE CROSSING 2.0, L.P. | : | No. 961 WDA 2025 |
| | : | |
| v. | : | |
| | : | |
| ROBERT C. BAIERL AND CATHY J. BAIERL | : | |
| | : | |
| APPEAL OF: PACKAGING CORPORATION OF AMERICA AND THREE CROSSING 2.0, L.P. | : | |

Appeal from the Order Entered May 9, 2025
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-17-005321

BEFORE:  OLSON, J., MURRAY, J., and BECK, J.

MEMORANDUM BY BECK, J.:                **FILED: June 17, 2026**

Packaging Corporation of America ("PCA") and Three Crossing 2.0, L.P. ("Three Crossing") (together, "Appellants") appeal from the order entered by the Allegheny County Court of Common Pleas ("trial court") finding the prescriptive easement running through their property in favor of Dellaposta Properties, LLC ("Dellaposta") is 25 feet wide.  Appellants argue that the trial court failed to properly review the record to determine the width of the

easement and seeks remand for a new review. We vacate and remand for the entry of an order directing that the easement's width is 12.5 feet.

This Court previously set forth the relevant facts as follows:

From 1988 to 2013, Cathy J. and Robert C. Baierl (the Baierls) owned property located in Pittsburgh's Strip District at 2735 Railroad Street. Dellaposta acquired the property from the Baierls in 2013 and it is referred to here as "the Dellaposta property." The Dellaposta property abuts the neighboring property of PCA (the PCA property) which is currently leased by Three Crossings. The deed that conveyed the Dellaposta property contained no reference to an easement running along its border with the PCA property.

Parallel between the Dellaposta property and the PCA property is a stretch of paved area, most of which sits on the PCA property. It allows vehicles to turn from Railroad Street and travel to loading docks located on the Dellaposta property. During the period when the Baierls and Dellaposta owned the Dellaposta property, third-party drivers would deliver shipments to those loading docks while operating large vehicles, including tractor-trailers as long as 53 feet. It was common for these third-party drivers to "back in or pull in frontward" from the paved area when making deliveries at the loading docks. **See** [N.T.,] 6/9/2021, at [] 47.

Significantly, at the entrance to the paved area from Railroad Street, there is a telephone pole and guardrail on opposite sides. At all relevant times, these two objects stood 36 feet apart and they bounded the width of the entrance used by drivers to access the loading docks on the Dellaposta property. **See** [N.T., 6/10/2021,] at [] 219-20. This was the only way into and out of the paved area.[1]

_____

[1]A visual depiction of the area at issue:
*(Footnote Continued Next Page)*

On April 25, 2017, the Baierls and Dellaposta executed a "confirmatory deed" in an attempt to formalize the transfer of the easement running parallel between the Dellaposta property and the PCA property. The next month, on May 4, 2017, Dellaposta filed a complaint in equity against PCA and Three Crossings' predecessor-in-interest, Oxford Development Company, seeking a declaratory judgment and an injunction establishing a prescriptive easement 36-feet wide by 280-feet long along the boundary of the PCA property and the Dellaposta property. These dimensions comported with the confirmatory deed executed by the Baierls and Dellaposta.

Three Crossings filed a counterclaim against Dellaposta and a crossclaim against the Baierls, asserting several causes of action rooted in a dispute over the easement, namely, for present purposes, a request for a declaratory judgment and an injunction. PCA filed a counterclaim against Dellaposta and a third-party complaint against the Baierls to that same effect.

[Appellants] moved for summary judgment against Dellaposta as to their claims for a declaratory judgment and an injunction and the motion was denied. *See* Trial Court Order,



10/9/2020, at 1. The trial court then held a bench trial and heard evidence, including the testimony of a real estate attorney, Andrea Geraghty (Geraghty), who [Appellants] had retained to investigate the dimensions of the easement. Geraghty stated that she had reviewed "various documents related to title easement, deeds of conveyance" as well as "a number of plans and surveys" concerning Dellaposta's acquisition of the subject property from the Baierls. *See* [N.T.], 6/[9-10]/2021, at [] 296.

According to Geraghty, Dellaposta had not established an easement but she testified that, hypothetically, any easement on the property would have a width of a typical driving lane "somewhere around 12 and a half feet – between 9 and 12 and a half feet." *Id.* at [] 300. She explained further that there had been no consistent route through the contested area that would measure 36 feet in width, but that based on a description of the vehicles which traveled on the path, an easement 12.5 feet in [width] would be sufficient to allow the vehicles access:

Typically, you'll have a road being 25 feet wide, half in each direction, 12 and a half feet. So that's my reason for concluding that 12 and a half feet is what you will need.

*Id.* at [] 301.

Following the submission of post-trial briefs and oral argument, the trial court entered a verdict in favor of Dellaposta and against PCA and Three Crossings on Dellaposta's claims for a declaratory judgment and an injunction. *See* Trial Court Memorandum and Order, 8/18/2022, at [] 17. In its memorandum and order, the trial court prescribed an easement measuring 12.5 feet in width along the boundary of the PCA property and the Dellaposta property. *See id.* In doing so, the trial court explicitly relied on Geraghty's testimony:

Although the trucks traversing the PCA Property to access the rear loading docks on the Dellaposta Property did not follow a specific lane of travel, no single truck ever used the full 36 feet of width that [Dellaposta] seeks. [Geraghty] testified that a typical roadway lane of travel is 9 to 12.5 feet in width. A width of 12.5 feet would account for the size of some of the larger tractor trailers entering the property, as well as provide a few feet on either side to account for the variations of different drivers. *The scope of*

- 4 -

*the easement, therefore, should be appropriately limited to a lane of travel of 12.5 feet in width.*

*Id.* at [] 16 (emphasis added).

Dellaposta filed a motion for post-trial relief, requesting that the trial court amend its prior ruling to expand the width of the prescriptive easement to 36 feet as it had sought in its complaint. The asserted basis for the motion was that the trial court improperly adopted Geraghty's opinion as its own and misapplied the standard for establishing the dimensions of a prescriptive easement.

[Appellants] filed a response in opposition to Dellaposta's motion for post-trial relief, arguing that the trial court had properly limited the width of the easement to 12.5 feet based on the actual use of the paved area between the PCA property and the Dellaposta property. The trial court had scheduled oral argument as to the post-trial motions on September 23, 2022, but instead, the trial court held on that date an off-record judicial conciliation at which Dellaposta for the first time suggested a width of 25 feet for the easement (doubling the width initially prescribed by the trial court).

Dellaposta's post-trial motion was granted and the trial court amended its prior order "to prescribe an easement width of 25 feet." Trial Court Order, 10/5/2022, at 1. PCA and the Three Crossings timely appealed and the trial court entered a 1925(a) opinion explaining that it had expanded the width of the easement from 12.5 feet to 25 feet in accordance with the "actual use" test for determining the dimensions of a prescriptive easement.

While the trial court found that the total width of the easement used by vehicles was 36 feet, the trial court reasoned that the easement had to be narrower because the path of travel along the easement was inconsistent and no vehicle used that much space for any given delivery to the loading docks on the Dellaposta property. To strike a balance between the purpose of the easement and the burden on the owners of the PCA property, the trial court increased the width of the easement:

> Th[e trial c]ourt's initial ruling prescribed a width of 12.5 feet, as that would have been enough to accommodate a truck travelling straight across the PCA property.

- 5 -

> However[,] … ***this** [**c**]**ourt was reminded of the fact that larger trucks would also need room to swing out in order to reverse and back their trailers up to the loading docks or in order to turn around and exit the property***. Not only was there testimony that trucks often did this, but also photographic evidence demonstrating how a truck would need to use an area of greater width in order to pull off these maneuvers.
>
> Increasing the width of the easement was, therefore, ***necessary to preserve its purpose*** …. [***T***]***ruck drivers pulling off these maneuvers require at least a full two-lane road (25 feet) and not a single lane of travel (12.5 feet)***. This [c]ourt, thus, prescribed a width of 25 feet based on the testimony of [] Geraghty and the other evidence which tended to show that an easement width greater than a single lane of travel was not only necessary, but actually used, for turning around or backing into the loading docks.

Trial Court Opinion, 2/13/2023, [at] 11-12 (emphases added).

> PCA and Three Crossings both argue[d] in their respective briefs that the trial court erred as a matter of law because it misapplied the test for determining the width of a prescriptive easement. These parties also ma[d]e the related claim that the trial court abused its discretion in prescribing an easement 25 feet in width despite the record evidence that the "actual use" of the easement amounted to no more than 12.5 feet in width, as the trial court had determined in its original order.

***Dellaposta Props., LLC v. Packaging Corp. of Am.***, 304 A.3d 765, 2023 WL 5350253, at \*\*1-3 (Pa. Super. 2023) (non-precedential decision) (original footnotes omitted; emphasis in original; footnote added).

The prior panel of this Court concluded that the trial court's factual basis for increasing the easement's width to 25 feet was erroneous. Specifically, this Court concluded:

First, there is no evidence as to the extent to which truck drivers used "swing out" or "backing up" maneuvers to access the loading docks on the Dellaposta property. Nor was any testimony offered as to how wide of a turning radius trucks actually used during the prescriptive period when entering and exiting the loading docks.

To the contrary, Dellaposta's witnesses only recounted that the trucks used a single lane of travel no wider than 12.5 feet when traveling along the paved area between the Dellaposta property and the PCA property. They testified that trucks would either pull straight into or back into the PCA property and then park parallel to the side of the building on the Dellaposta property to access the loading docks. *See* [N.T.], 6/9/2021, at [] 46-48, 157-58. We find no evidence in the record showing that these vehicles ever actually used two full lanes (totaling 25 feet in width) to do so.

Second, by determining the easement's width according to what drivers purportedly "need" (*i.e.*, 12.5 feet) or what would be purportedly "reasonable" (*i.e.*, 25 feet), the trial court did not apply the correct test. Under the proper standard of "actual use," the only relevant consideration in this case is how trucks, in fact, traversed a right-of-way over the prescriptive period of 21 years. *See generally Hash*[*v. Sofinowski*], 487 A.2d [32,] 35-36 [(Pa. Super. 1985)] (vacating order granting prescriptive easement because the width of the easement had been improperly increased based on the necessity of transporting large equipment through a lane of travel).

In sum, because the width of a prescriptive easement is only established by the extent of actual use during the prescriptive period, the trial court must ascertain the dimensions of that use based on record evidence. We, therefore, vacate in part and remand with instructions for the trial court to pinpoint more precisely the exact bounds of the prescriptive easement within 36 feet based on how the paved area on the Dellaposta property was actually used over a 21-year period. *See id.* at 36.

*Dellaposta Props., LLC*, 304 A.3d 765, at *4.

Upon remand, Appellants filed a motion to reinstate the August 18, 2022 order and find the easement was 12.5 feet wide. In response, Dellaposta

- 7 -

requested the trial court reopen the record and receive additional evidence to determine the width of the easement. On January 17, 2024, the trial court denied Appellants' motion and granted Dellaposta's motion. Appellants appealed. This Court vacated the January 17 order and directed the trial court to determine the width of the easement based on the established record. *See* ***Dellaposta Props., LLC v. Packaging Corp. of Am.***, 207 WDA 2024 (Pa. Super. Apr. 26, 2024) (per curiam order). Dellaposta filed an application for reconsideration, which this Court denied; our Supreme Court subsequently refused Dellaposta's request for additional review. ***See Dellaposta Props., LLC v. Packaging Corp. of Am.***, 208 WDA 2024 (Pa. Super. May 13, 2024) (per curiam order), *appeal denied*, 175 WAL 2024 (Pa. 2024).

On May 9, 2025, the trial court issued a decision reaffirming the 25-foot width of the easement.[2] Specifically, the trial court found that was the "space necessary for maintaining the purpose of the easement." Trial Court Opinion, 5/9/2025, at 2.

Appellants timely appealed, raising two issues for our review:

1. Whether the trial court erred, as a matter of law, in finding that Dellaposta has a prescriptive easement 25 feet wide to enter and use the PCA property for the express purpose of accessing the side loading docks on the Dellaposta property?

2. Whether the trial court abused its discretion in finding that Dellaposta has a prescriptive easement 25 feet wide to enter and use the PCA Property for the express purpose of accessing

---

[2] The trial court did not enter a separate order on that date.

the side loading docks on the Dellaposta property, where there was no evidence at trial to support such actual use of 25 feet[?]

Appellants' Brief at 10 (unnecessary capitalization and suggested answers and reasoning omitted).

Our standard of review is as follows:

In non-jury actions, our review is limited to considering whether the trial court's verdict is supported by competent evidence in the record and is free from legal error. We review discretionary questions for abuse of discretion and apply a de novo standard of review to questions of law. We give great deference to the factual findings of the trial court.

*Gruca v. Clearbrook Cmty. Servs. Ass'n, Inc.*, 286 A.3d 1273, 1277 (Pa. Super. 2022) (citations, brackets, and quotation marks omitted).

"A prescriptive easement is created by (1) adverse, (2) open, (3) notorious, (4) continuous and uninterrupted use for a period of twenty-one (21) years." *Thomas A. Robinson Fam. Ltd. P'ship v. Bioni*, 178 A.3d 839, 849 (Pa. Super. 2017) (citation omitted). "The width of a prescriptive easement must be established by the extent of actual use during the prescriptive period." *Hash*, 487 A.2d at 36; *see also Bodman v. Bodman*, 321 A.2d 910, 912 (Pa. 1974) (noting "an easement by prescription is limited by the use made during the prescriptive period").

In establishing a prescriptive easement, constant use need not be demonstrated in order to establish the continuity of the use. Rather, continuity is established if the evidence shows a settled course of conduct indicating an attitude of mind on the part of the user or users that the use is the exercise of a property right.

*Newell Rod & Gun Club, Inc. v. Bauer*, 597 A.2d 667, 670 (Pa. Super. 1991) (citation and quotation marks omitted); *accord Bioni*, 178 A.3d at 848. "[T]he party asserting the easement must demonstrate 'clear and positive' proof." *Vill. of Four Seasons Ass'n, Inc. v. Elk Mountain Ski Resort, Inc.*, 103 A.3d 814, 822 (Pa. Super. 2014) (citation omitted).

We will address Appellants' interrelated claims together. They contend that the trial court applied an incorrect legal standard in finding the width of the prescriptive easement to be 25 feet. Appellants' Brief at 30. They argue that the trial court improperly utilized the necessities of the trucks to determine the width of the easement. *Id.* at 30, 31-32, 35-36; *see also id.* at 33 (noting that the trial court "fixed the width of the prescriptive easement at 25 feet 'because that is the amount of space necessary for maintaining the purpose of the easement'"). Contrary to the trial court's finding, Appellants maintain that the law requires the precise dimensions of the easement to be determined by actual and continued use of the land during the prescriptive period. *Id.* at 30, 32, 33-34.

To that end, Appellants argue that the trial court's finding that the easement is 25 feet wide has no record support and is "demonstrably capricious." *Id.* at 40; *see also id.* at 44 (emphasizing the term "25 feet" only appears one time in the hearing transcript). Appellants highlight that neither Robert Baierl ("Baierl") nor Randall Doman ("Doman"), an employee who worked for the Baierls, testified to the actual width of the path used by

vehicles accessing the loading docks. *Id.* at 36, 42, 43; *see also id.* at 45-46 (observing Baierl and Doman testified about areas of the PCA property that could not be used because they were blocked by parking spaces, the parking of trailers, and a guardrail which prevented turning around on the PCA property). They contend that although trucks "swing-out" or "back up," there was no testimony with how long or often the trucks used these maneuvers during the prescriptive period. *Id.* at 36-37, 38, 42; *see id.* at 39-40, 44 (noting there is no evidence that trucks used 25 feet for the entire length of the easement to execute maneuvers). Appellants state that the trial court indicated that larger trucks would need more room to access the docks, but emphasize there was no evidence presented that trucks executed these maneuvers. *Id.* at 38; *see also id.* at 39 (identifying that video introduced at trial was taken after the prescriptive period and is not relevant to the actual use determination).

Instead, Appellants argue that Dellaposta's witnesses indicated that trucks used a single lane of travel to access the side loading docks, and did not indicate that the vehicles used two lanes to access the docks. *Id.* at 37, 39, 41, 42-43, 47-48; *see also id.* at 42 (asserting there was no evidence that two trucks simultaneously used the easement). According to Appellants, a prescriptive easement of 12.5 feet wide would not interfere with Dellaposta's use and would benefit the owner of the PCA property. *Id.* at 48-49.

At the bench trial, the parties introduced a deposition by Baierl, wherein he stated that the larger trucks would pull in alongside the building, allegedly encompassing the entire 36-foot area. N.T., 6/9-10/2021, at 47, 48. Baierl admitted, however, that "I don't think we ever used full width. Nothing coming and going is 36 feet wide." *Id.* at 221; *see also id.* (stating they "used some of that 36 feet from the time we moved in"). It was common for these third-party drivers to either "back in or pull in frontward" from the paved area when making deliveries at the loading docks. *Id.* at 47.

Doman testified that vehicles ranging from small panel vans to 53-foot trailers used the easement. *Id.* at 56. Larger trucks, including 45-foot trucks, would come into the area and turn around. *Id.* at 58-60. Doman, however, confirmed that the maximum width of a tractor-trailer was 8.5 feet, and that the turning radius of different trucks and vehicles would vary. *Id.* at 71; *see also id.* at 137.

Debra Dellaposta ("Debra"), a small shareholder in Dellaposta, testified that trucks had to travel on PCA property to access their loading docks. *Id.* at 102, 104-05. She stated that PCA cars parked on the PCA side of the guardrail but they did not impede access to the Dellaposta property. *Id.* at 110. Debra indicated they would need a 29-foot wide easement to access the loading docks. *Id.* at 116.

Curtis Lang ("Lang"), an employee at PCA, testified that he had witnessed a 53-foot trailer pull into the loading docks and that some of these

trucks have difficulty because of the length of the tractor. *Id.* at 241. He observed that the access road is wider than it needs to be based on the width of equipment. *Id.* at 249. Lang stated that a vehicle would need about 13 feet to back into the access road, explaining that he arrived at this number by adding the standard width of a trailer plus two feet on either side. *Id.* at 250.

Geraghty testified that the prescriptive "easement width would be somewhere around 12 and a half feet." *Id.* at 300. She further explained that road was "25 feet wide, half in each direction, 12 and a half feet. So that's my reason for concluding that 12 and a half feet is what you will need." *Id.* at 301. She noted that this was a "typical roadway between buildings like this in that part of the city" and "your travel lanes are typically 12 and a half feet wide in virtually all road situations." *Id.* at 315, 316. She emphasized that a "typical cart path built for a road is 12 and a half feet wide." *Id.* at 300-01; *see also id.* at 315. Geraghty stated that she heard all of the testimony and found that "different routes were taken at different times by various people. I have heard no evidence that details that 36-foot[-]wide easement and I've heard different routes." *Id.* at 300; *see also id.* at 301. She testified that the prescriptive easement does not exist across the whole property, but at a specific location. *Id.* at 316.

Although this Court expressly found that there was "no evidence in the record showing that these vehicles ever actually used two full lanes (totaling 25 feet in width)," *Dellaposta Props., LLC*, 304 A.3d 765, at *4, on remand,

the trial court found that the evidence of record established an easement of

25 feet:

> [T]he record supports a prescriptive easement of 25 feet in width because that is the amount of space necessary for maintaining the purpose of the easement. From 1988 until 2006, [] Cathy and Robert C. Baierl owned the property in question. Parts of Mr. Baierl's deposition were read into the record at the non-jury trial. He testified in his deposition that trucks traveled to and from the rear loading dock of the Dellaposta property almost daily and they would back into the side entrance perpendicularly. [N.T., 6/9-10/2021, at] 45. He explained that the 53-foot trailers would have to use the side of the building. [*Id.* at] 47. He also stated that when he bought the property, he assumed he had the right to use the 36-foot area because of the clearly defined parking spaces at the two points of access. [*Id.* at] 48.

> The evidence showed that starting in 1988, large trucks would regularly use the paved lot between the guardrail and the telephone pole for ingress and egress to get to two loading docks. [] Doman … testified that 45[-] and 53-foot trailers used both the back bay and the middle bay to make deliveries. [*Id.* at] 58[,] 63-64. [] Doman also explained that to get his personal vehicle and his company vehicle to the back side of the building, he would use the same route as the trucks. [*Id.* at] 62. [] Doman stated that sometimes trucks used the upper side of the telephone pole when they pulled in. [*Id.* at] 91. He also confirmed that vehicles would occasionally park on the other side of the guardrail, but it was still possible for them to enter the rear loading docks by driving around. [*Id.* at] 89.

> Debra []testified that she saw PCA cars parked on the PCA side of the guardrail but that they did not impede access to the rear of the Dellaposta property. She stated that they would squeeze by on the left side of the telephone pole or go around the right side. [*Id.* at] 109-110. Debra []also explained that she believes they need 29 feet to access the rear loading docks and parking for their building. [*Id.* at] 116. She testified that in 2016, when their roof was replaced, they used the entire area for several months and nobody complained. [*Id.* at] 117.

The Court also relied on [Appellants'] expert, [] Geraghty[,] in determining the prescriptive easement of 25 feet in width. [] Geraghty testified that a typical lane of travel is 9 to 12.5 feet wide. [*Id.* at] 315. In this case, however, the evidence showed that the larger trucks used both lanes to get their trailers to the loading docks and to turn around and exit the property.

Therefore, based on the foregoing, this Court determined that there was substantial evidence to support an easement width of 25 feet.

Trial Court Opinion, 5/9/2025, at 2-4.

Further, and again in contrast this Court's decision, the trial court again found the width of the easement based upon what it found was "necessary" for the trucks to reach the loading docks, but did not make a finding as to the "actual use" in determining the width of the easement. *See Dellaposta Props., LLC*, 304 A.3d 765, at *4. As well intentioned as the trial court may have been, by limiting the use of the easement to the area necessary to meet its purpose, the trial court did not apply the proper test; as stated above, a prescriptive easement is limited by the **actual use** made during the prescriptive period, not what appears to be necessary to effectuate its purpose. *See Bodman*, 321 A.2d at 912; *Hash*, 487 A.2d at 36.[3]

_____

[3] We note that Appellants cite case law from other states to support their argument. We "receive out-of-state decisions as persuasive authority but not binding precedent." *Branham v. Rohm & Haas Co.*, 19 A.3d 1094, 1107 (Pa. Super. 2011) (cleaned up). A New York case, cited by Appellants, concluded that the plaintiff had established an easement by prescription over the servient estate through use by trucks over various paths across the servient property and "limited the use of the property to the area necessary for the purpose of the easement, which was to obtain access to the loading

*(Footnote Continued Next Page)*

Furthermore, this Court previously concluded that the record lacks any evidence as to what extent the drivers used "swing out" or "backing up" maneuvers or the width of the turning radius for the trucks accessing the loading docks during the prescriptive period. *See Dellaposta Props., LLC*, 304 A.3d 765, at *4. Although Dellaposta cites testimony from Doman and Baierl that purportedly showed the easement's width could have been as wide as 36 feet, their testimony failed to establish that this was the actual use of the area during the prescriptive period. *See, e.g.,* N.T., 6/9-10/2021, at 46-47, 58, 60. In fact, their testimony merely indicated that drivers would traverse the easement differently; they did not provide any testimony or proof that would establish a 25-foot-wide easement.

---

docks at the claimant's facility." *Bedik Corp. v. Herrick Road Holdings LLC*, 90 N.Y.S.3d 839, 843 (N.Y. Sup. Ct. 2018). The *Bedik* court also summarized various holdings from other jurisdictions and found that where there are deviations in the path used over the servient estate, courts use different tests, including "pattern of use," "substantial identity," or "definite line of travel." *Id.* at 842-43 (citing *Ventres v. Goodspeed Airport, LLC*, 881 A.2d 937 (Conn. 2005); *Concerned Citizens of Brunswick County Taxpayers Ass'n. v. State ex rel. Rhodes*, 404 S.E.2d 677 (N.C. 1991); *Community Feed Store, Inc. v. Northeastern Culvert Corporation*, 559 A.2d 1068 (Vt. 1989); *Warsaw v. Chicago Metallic Ceilings, Inc.*, 676 P.2d 584 (Cal. 1984)). Other states have addressed this issue and found "the court may, as a matter of equity, choose to designate only one of the proven routes as the defined prescriptive easement, or redefine the path to avoid unduly burdening the servient estate." *M.N.V. Holdings LC v. 200 S. LLC*, 494 P.3d 402, 408 (Utah App. 2021). We find these decisions to be of little persuasive value, as our courts have held actual use must be found to determine the dimensions of a prescriptive easement. *See Bodman*, 321 A.2d at 912; *Hash*, 487 A.2d at 36.

We are constrained by this Court's prior holding. *See Neidert v. Charlie*, 143 A.3d 384, 391 (Pa. Super. 2016) (noting "when an appellate court has considered and decided a question submitted to it upon appeal, it will not, upon a subsequent appeal on another phase of the case, reverse its previous ruling"). This includes our prior conclusion that there is no evidence in the record to support a finding that the width of the easement was 25 feet, as used over the prescriptive period. *See Hash*, 487 A.2d at 34 (stating that a prescriptive easement is established "by actual, continuous, adverse, visible, notorious and hostile possession of the property in question for a period of 21 years," and "the scope of such an easement must necessarily be a function of the continued, adverse use by which it was generated and is thus limited to that of the prescriptive period").

Under most circumstances, we would again remand the matter to the trial court to determine, based upon the record evidence, the width of the easement. In the years that have intervened, however, the trial court judge retired, *see* Appellees' Brief at 24, and any newly assigned judge would be in the same position as this Court, reviewing a cold record to reach the determination. Thus, in the interest of judicial economy, we will review the record to determine the width of the easement. *See Commonwealth v. Izurieta*, 171 A.3d 803, 809 (Pa. Super. 2017) ("[t]he successor judge … did not have the opportunity to observe the trial proceedings and he is therefore in no different position, in terms of the 'cold' record, than is this Court").

The evidence of record establishes that trucks of varying sizes traversed the PCA property to access the loading docks on the Dellaposta Property. The trucks appear to have used different paths to reach the loading docks; however, the record only supports a finding that the trucks employed a single lane of travel when using the easement during the prescriptive period. While some variation of the trucks' actual use of the easement is acceptable, Dellaposta can only obtain a prescriptive easement equal in area to that portion of the PCA property actually used. **See Hash**, 487 A.2d at 36 (holding "that the easement in question is limited in location and size to that which arose during the prescriptive period"). In this case, the evidence established that the trucks used a single lane of travel to the loading docks, and, as Geraghty testified (and the trial court found credible), a single lane of travel had a width of 12.5 feet. As Dellaposta's own employee testified at trial, the largest trucks traversing the easement had a width of 8.5 feet. Therefore, an easement with "[a] width of 12.5 feet would account for the size of some of the larger tractor trailers entering the property, as well as provide a few feet on either side to account for the variations of different drivers." Trial Court Opinion, 8/18/2022, at 16; **see also Hash**, 487 A.2d at 36 (there is "no authority which permits a right-of-way acquired by prescription to expand in size due to changes in the equipment brought upon it").

This provides Dellaposta the necessary area to traverse the easement while also providing the least intrusive burdens on the servient estate. **See**

*McGavitt v. Guttman Realty Co.*, 909 A.2d 1, 5 (Pa. Super. 2006) (a "prescription imposes a burden upon the 'servient tenement' over which the easement runs and effectively acts as a penalty upon the rightful owner of the land"); *see also Kushner v. Butler County Airport Auth*., 764 A.2d 600, 603-04 (Pa. Super. 2000) (a servient estate owner retains the right to use an access easement located on his property as long as the use does not unreasonably restrict the dominant estate owner's right to traverse the area). Accordingly, on remand, we direct the trial court to enter an order directing that the prescriptive easement in this case should be 12.5 feet wide and be located on the boundary of the two properties.[4]

Order vacated. Case remanded with instructions. Jurisdiction relinquished.

---

[4] As Appellants observe, "Three Crossings requested, and the [t]rial [c]ourt agreed, that the prescriptive easement should [be] located on the boundary of the PCA [p]roperty and the Dellaposta [p]roperty." Appellants' Brief at 48; *see also id.* at 50 (in its conclusion, arguing the "width of the prescriptive easement across the PCA [p]roperty for the benefit of the Dellaposta [p]roperty is 12.5 feet wide along the boundary of the PCA [p]roperty and the Dellaposta [p]roperty to the end of the rear side loading dock for the express purpose of accessing the side loading docks"). In its initial decision, the trial court found that the prescriptive easement was used to access the rear loading docks and would "extend the length of the boundary line between the two properties and be 12.5 feet in width." Trial Court Opinion, 8/18/2022, at 17. Appellees do not dispute this location.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 06/17/2026